## COMMONWEALTH vs. MARTEL MUBDI.

Suffolk. December 7, 2009. - March 29, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Automobile, Expectation of privacy, Affidavit, Protective sweep, Reasonable suspicion.

This court concluded that the Commonwealth's failure to challenge the affidavit that a criminal defendant filed, pursuant to Mass. R. Crim. P. 13 (a) (2), in support of his pretrial motion to suppress evidence resulted in a waiver on appeal of any argument regarding the particularity of the affidavit. [388-391]

In a criminal defendant's pretrial motion to suppress evidence of marijuana seized by police from a parked vehicle (in which the defendant was sitting in the driver's seat), the defendant, who had automatic standing to challenge the constitutionality of the search, satisfied his burden of establishing a reasonable expectation of privacy in the vehicle, where the place that the marijuana was located (inside the center console of the vehicle) could not be seen without entering the vehicle. [391-395]

At the hearing on the criminal defendant's pretrial motion to suppress evidence of marijuana seized by police from a parked vehicle (in which the defendant was sitting in the driver's seat), the Commonwealth did not satisfy its burden of establishing that the investigatory stop was justified by reasonable suspicion, based on specific and articulable facts, that the defendant had committed, was committing, or was about to commit a crime, where the Commonwealth failed to establish the veracity of the anonymous 911 caller whose report formed the basis of the dispatch on which the police relied in stopping the vehicle. [395-399]

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on May 17, 2007.

A pretrial motion to suppress evidence was heard by *Eleanor C. Sinnott,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Christopher L. Maclachlan* for the defendant.

*Kathleen Celio*, Assistant District Attorney, for the Commonwealth.

GANTS, J. The defendant was charged in the Dorchester Division of the Boston Municipal Court Department with possession of marijuana, in violation of G. L. c. 94C, § 34; possession of marijuana with the intent to distribute, in violation of G. L. c. 94C, § 32C (*a*); and possession of marijuana with the intent to distribute within 1,000 feet of a school or public park, in violation of G. L. c. 94C, § 32J.[1] The defendant filed a motion to suppress evidence, including the marijuana he is charged with possessing, seized by Boston police officers on May 16, 2007, from a parked vehicle during an investigatory stop. After an evidentiary hearing, a judge denied the motion to suppress, finding that the police had reasonable suspicion to make the investigatory stop and that the protective sweep of the vehicle in which the defendant had been seated was reasonable to protect the safety of the police officers and appropriately limited in scope. A single justice of this court granted the defendant leave to file an interlocutory appeal in the Appeals Court from the denial of the motion. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996).

The Appeals Court issued an unpublished memorandum and order pursuant to its rule 1:28, affirming the denial of the defendant's motion to suppress, but on grounds different from the motion judge. *Commonwealth* v. *Mubdi*, 74 Mass. App. Ct. 1110 (2009). The Appeals Court concluded that the information that prompted the investigatory stop fell short of reasonable suspicion, but held that the defendant's motion to suppress should still have been denied because, in the affidavit he filed under Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004), he failed to assert that he had an expectation of privacy in the vehicle in which the police located the challenged evidence and, at the evidentiary hearing, he failed to establish his reasonable expectation of privacy in the vehicle. We granted the defendant's application for further appellate review. We now reverse the denial of the motion to suppress.

[1] Charges of possession of cocaine, in violation of G. L. c. 94C, § 34, and of conspiracy to violate the drug laws, in violation of G. L. c. 94C, § 40, were dismissed at the request of the Commonwealth.

*Facts.* We summarize the facts concerning the stop of the defendant and the seizure of the marijuana as found by the motion judge, supplemented where necessary with uncontroverted evidence drawn from the record of the suppression hearing. *Commonwealth* v. *Watson,* 430 Mass. 725, 726 n.5 (2000).

On May 16, 2007, two uniformed Boston police officers, Wilson Quiles and David O'Connor, were patrolling the area of Lyndhurst and Washington Streets in the Dorchester section of Boston in a marked cruiser as part of a rapid response unit. Both officers were familiar with the corner of Lyndhurst and Washington Streets, knowing it to be a high crime area, and had responded to calls there for violent crime and drug and firearm-related offenses in the past. At approximately 5:15 P.M., they received a radio dispatch that relayed the contents of an anonymous call to the 911 emergency telephone line. The tape recording of the police dispatch was played at the hearing on the motion to suppress, and the parties have stipulated to the accuracy of a transcription, which reads:

> "Stay on lookout for FIO [field interrogation observation] purposes at this time, stay on lookout for Blue Dodge Charger, Georgia registration AHT4351, should be occupied by two black males. They were observed 15 minutes ago on Lyndhurst St., next [to] the Post Office. Observed money and an object being passed, believed to be a firearm."

The dispatcher also informed the officers that gun shots had been fired the night before on Lyndhurst Street.

Officers Quiles and O'Connor were driving on Washington Street at the time of the radio bulletin, and observed a blue Dodge Charger automobile, with a Georgia registration plate matching the plate number given by the dispatch, parked on Lyndhurst Street. Officer O'Connor observed an individual leaning into the passenger side of the Dodge Charger and speaking to the vehicle's two occupants. Officer Quiles, who was driving, turned the police cruiser around and drove the wrong way up Lyndhurst Street. As he did this, the individual who had been standing outside the Dodge Charger began walking away from the vehicle toward Washington Street in the direction of the oncoming cruiser. The two officers left the cruiser and approached the three men. Officer Quiles had his gun drawn.

As Officer Quiles held his gun on the individuals in the vehicle, Officer O'Connor pat frisked and handcuffed the individual on the sidewalk who had been speaking to the occupants of the vehicle. No weapons or drugs were found. Officer Quiles then removed the defendant, who had been in the driver's seat, and the passenger from the vehicle. They, too, were handcuffed and frisked for weapons, and no weapons or drugs were found. After the three men were placed in the back seat of police cruisers,[2] Officer O'Connor began to search the inside of the vehicle for a firearm. He did not find a firearm, but in the center console between the two front seats he located two bags containing a leafy, green substance that he believed to be marijuana.[3]

*Discussion.* "In reviewing the denial of a motion to suppress, we accept the judge's findings of fact absent clear error." *Commonwealth* v. *Damian D.*, 434 Mass. 725, 726 (2001). We find no clear error as to any fact relevant to this decision. We then "conduct an independent review of [the judge's] ultimate findings and conclusions of law." *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). Our duty is to determine "the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).

1. *Reasonable expectation of privacy and the adequacy of the affidavit filed under rule 13 (a) (2).* We consider first the grounds for denying the motion to suppress relied on by the Appeals Court — that the defendant failed, in the affidavit he filed under rule 13 (a) (2), to assert that he had an expectation of privacy in the vehicle searched, and failed to establish at the evidentiary hearing his reasonable expectation of privacy in the vehicle.

Rule 13 (a) (2) codifies the standard requirements for a defendant's pretrial motion, including a motion to suppress evidence alleged to be the product of an unreasonable search or seizure. The motion papers must contain: (1) a pretrial motion stating "the grounds on which it is based" and including "in separately

---

[2]Several other officers had by now driven to the scene.

[3]Officer O'Connor found a scale in the passenger side door compartment. He also seized cash and a cellular telephone, but he could not recall where those items were found.

numbered paragraphs all reasons, defenses, or objections then available, which shall be set forth with particularity"; and (2) an affidavit giving in detail "all facts relied upon in support of the motion and signed by a person with personal knowledge of the factual basis of the motion." Mass. R. Crim. P. 13 (a) (2).[4]

Where a defendant has filed a motion to suppress alleging an unconstitutional search or seizure, the detail required in the motion and accompanying affidavit under rule 13 (a) (2) must be sufficient to accomplish two practical purposes. First, it must be sufficient to enable a judge to determine whether to conduct an evidentiary hearing. See *Costa* v. *Commonwealth*, 440 Mass. 1003, 1004 (2003), quoting *Commonwealth* v. *Santosuosso*, 23 Mass. App. Ct. 310, 313 (1986) (one purpose of rule 13 [a] [2] is to provide judge with "statement of anticipated evidence . . . to meet the defendant's initial burden of establishing the facts necessary to support" motion). An evidentiary hearing is necessary only when the defendant has alleged facts that, if true, would establish (1) that evidence was obtained through a search or seizure for which the Commonwealth must prove probable cause, reasonable suspicion, or consent to search; and (2) that the defendant has standing to challenge the constitutionality of the search or seizure. Cf. *Commonwealth* v. *Costa*, 65 Mass. App. Ct. 227, 228 n.1 (2005). Second, the affidavit required under rule 13 (a) (2) must be sufficiently detailed to give fair notice to the prosecution of the particular search or seizure that the defendant is challenging, so that the prosecution may determine which witnesses it should call and what evidence it should offer to meet its burden of proving probable cause, reasonable suspicion, or consent. *Costa* v. *Commonwealth, supra,* quoting *Commonwealth* v. *Santosuosso, supra* (second purpose of rule 13 [a] [2] is to give Commonwealth "fair notice of the specific

---

[4]The affidavit filed with the motion may not be offered in evidence by the defendant at the suppression hearing and is not a substitute for the defendant's testimony at the hearing. See *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 776 n.12 (2000); *Commonwealth* v. *Rodriguez*, 74 Mass. App. Ct. 314, 316 n.2, further appellate review granted, 454 Mass. 1109 (2009) ("while the defendant's supporting affidavit sufficed to raise the constitutional issues, that affidavit is not evidence at the suppression hearing"). See also J.A. Grasso & C.M. McEvoy, Suppression Matters under Massachusetts Law § 2-3[d][3], at 2-10 — 2-11 (2009-2010). At trial, the Commonwealth may use the defendant's affidavit only to cross-examine him as to prior inconsistent statements. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 637-638 (1997).

facts relied on in support of the motion"). See *Commonwealth v. Silva*, 440 Mass. 772, 781 (2004) (compliance with rule 13 [a] [2] "alerts the judge and the Commonwealth to the suppression theories at issue, and allows the Commonwealth to limit its evidence to these theories").

The degree of detail required in a rule 13 (a) (2) affidavit must be evaluated in light of these two practical purposes. In this case, the affidavit was not needed to establish standing, because the defendant was charged with crimes alleging possession of the marijuana found in the automobile, that is, crimes where possession at the time of the contested search is an essential element of the charges, which provided him with automatic standing. See *Commonwealth v. Montanez*, 410 Mass. 290, 301 (1991); *Commonwealth v. Amendola*, 406 Mass. 592, 601 (1990). The affidavit, however, needed to make clear that the defendant was contesting the constitutionality of the search of the vehicle and the subsequent search of his person incident to arrest. The affidavit the defendant submitted, reprinted below, did not make that clear.[5] It simply asserted that the police claimed to have found two bags of vegetable material, a digital scale, three cellular telephones, and cash "in [his] possession." In view of the ambiguity as to whether the defendant was limiting his motion to the search of his person, the Commonwealth, before the evidentiary hearing, could have asked for a more particularized affidavit or moved that the motion to suppress be denied without a hearing for failing to provide the Commonwealth fair notice as to the search he was challenging.[6] The Commonwealth, however, made no such motion and challenges the particularity of

---

[5]"I, Martel Mubdi, state the following is true to the best of my knowledge, information and belief: (1) I am the defendant in this action. (2) On May 16, 2007, I was in the area [of] 4 Lyndhurst Street in Boston, Massachusetts. (3) Men who I later learned were police officers stopped me. (4) I did not consent to the stop. (5) I was not shown a search warrant. (6) I later learned that the police claim to have found two plastic bags of a green vegetable material, one Fuzion FW-350 digital scale, three cellular telephones, and $299.00 in cash in my possession. (7) I did not make any voluntary statements. (8) This affidavit does not include all the facts and circumstances known to the affiant about this event. It was prepared solely for the purpose of litigating the accompanying Motion to Suppress Evidence."

[6]The judge also could have issued such orders sua sponte. See *Commonwealth v. McColl*, 375 Mass. 316, 322 (1978) (denying motion without hearing on ground that attached affidavit inadequate); *Commonwealth v. Costa*, 65 Mass.

the affidavit only on appeal. By failing to have made such a motion, the Commonwealth waived any objection to the particularity of the defendant's affidavit pursuant to rule 13 (a) (2). See *Commonwealth* v. *Sheehy*, 412 Mass. 235, 237 n.2 (1992) (where Commonwealth failed to raise issue during motion hearing or in opposition brief to motion for new trial, court "need not consider an argument which urges reversal of a trial court's ruling when that argument is raised for the first time on appeal").

The Commonwealth also contends that the defendant failed to satisfy his burden of proving that he had a reasonable expectation of privacy in the vehicle where the marijuana was found. See *Commonwealth* v. *Rice*, 441 Mass. 291, 295 (2004) (burden rests with defendant to prove reasonable expectation of privacy). Under the Fourth Amendment to the United States Constitution, the question whether the defendant has standing to challenge the constitutionality of a search or seizure is merged with the determination whether the defendant had a reasonable expectation of privacy in the place searched. See *Rakas* v. *Illinois*, 439 U.S. 128, 138-139 (1978). In short, under the Fourth Amendment, a defendant has no standing if he has no reasonable expectation of privacy in the place searched. *Id.* at 139 ("The inquiry under either approach is the same").

Under art. 14 of the Massachusetts Declaration of Rights, however, the question of standing remains separate from the question of reasonable expectation of privacy. See *Commonwealth* v. *Williams*, 453 Mass. 203, 207-208 (2009) (standing and expectation of privacy are "interrelated" concepts but considered separately);

App. Ct. 227, 228-229 n.1 (2005) (judge could have denied motion without hearing or insisted on proper affidavit). However, there may be circumstances where "insistence on strict requirements to deprive a defendant of a fair hearing of a motion raising a constitutional claim may be an abuse of discretion." *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 212 (1991). See *Commonwealth* v. *Santosuosso*, 23 Mass. App. Ct. 310, 312-314 (1986) (error to deny motion to suppress based on strict application of Mass. R. Crim P. 13 [a] [2], 378 Mass. 871 [1979]). "The rules were not intended to be administered inflexibly," and "[w]here a literal interpretation of a rule and its application in a specific situation . . . would operate unfairly or produce an unjust result, that interpretation is to yield to the principle enunciated in [Mass. R. Crim. P. 2 (a), 378 Mass. 844 (1979), that the rules 'are intended to provide for the just determination of every criminal proceeding']." *Id.* at 313 n.4, quoting Reporters' Notes to Mass. R. Crim. P. 2, Mass. Ann. Laws, Rules of Criminal Procedure at 14 (1980).

*Commonwealth* v. *Frazier*, 410 Mass. 235, 244 n.3 (1991) ("we think it is best to separate the issue of standing from the question whether there has been a search for constitutional purposes"). This separation matters most in cases where a defendant is charged with a possessory offense, because art. 14 gives a defendant automatic standing to challenge a search of a private place, such as an automobile or home, in which the object he is alleged to possess was found. See *Commonwealth* v. *Frazier*, *supra* at 243; *Commonwealth* v. *Amendola*, *supra* at 601 & n.4. Where the defendant has automatic standing, the defendant need not show that *he* has a reasonable expectation of privacy in the place searched.[7] The practical consequence of automatic standing is that, if a defendant is charged with illegally possessing drugs or

---

[7] In *Commonwealth* v. *Amendola*, 406 Mass. 592, 594 (1990), the police searched two automobiles, a Pontiac Grand Prix and a Triumph. In the Pontiac, the officers found contraband, on which the possessory charges against the defendant were based. *Id.* at 602. The search of the Triumph led to the discovery of a scale, which by itself would have been insufficient to convict the defendant of the possessory charges. *Id.* The defendant testified that he did not drive the Pontiac and had never been in the Pontiac. *Id.* at 595. We concluded that, "[o]n remand, the defendant is entitled to benefit from the automatic standing rule with respect to the search of the Pontiac automobile," but that he would only have standing to contest the search of the Triumph "if he shows that he had a legitimate expectation of privacy with respect to that vehicle." *Id.* at 602. In other words, the "benefit" of automatic standing is that the defendant need not prove that he had a reasonable expectation of privacy in the home or automobile searched, where he is charged with possession of contraband found during that particular search.

In *Commonwealth* v. *Ware*, 75 Mass. App. Ct. 220, 227 (2009), the Appeals Court remarked that "in cases where there are codefendants and constructive possession triggers automatic standing, there is a limited exception to the requirement that each defendant have an expectation of privacy in the place searched." We agree with the notion of a "limited exception," but we disagree that it applies only when there is a codefendant. We acknowledge that the cases cited by the Appeals Court in the *Ware* decision, i.e., *Commonwealth* v. *Frazier*, 410 Mass. 235, 243 (1991), and *Commonwealth* v. *Alvarado*, 420 Mass. 542, 543 n.2 (1995), "represent situations where there are co-defendants *and* where constructive possession triggers automatic standing" (emphasis in original). J.A. Grasso & C.M. McEvoy, Suppression Matters Under Massachusetts Law § 3-5[f], at 3-29 (2009-2010). But we did not hold in those cases that a defendant charged with a possessory offense is denied the benefit of automatic standing unless another individual has also been charged with the same crime. Automatic standing is not limited to joint possession cases. See *Commonwealth* v. *Amendola*, *supra* at 601 ("When a defendant is charged with a crime in which possession of the seized evidence at the time of the contested search is an essential element of guilt, the defendant shall be deemed

firearms that were seized during a search, the defendant may succeed in suppressing such evidence where the search was unconstitutional, regardless of whether he has a subjective or objectively reasonable expectation of privacy in the place where the drugs or firearms were found.[8]

The defendant, however, still must show that there was a search in the constitutional sense, that is, that *someone* had a reasonable expectation of privacy in the place searched, because only then would probable cause, reasonable suspicion, or consent be required to justify the search. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991) ("When a defendant has standing under our rule to have standing to contest the legality of the search and the seizure of that evidence").

Finally, we reiterate that, in *Commonwealth* v. *Amendola, supra* at 600, we chose to adopt the automatic standing rule of *Jones* v. *United States*, 362 U.S. 257 (1960), even though the United States Supreme Court abandoned the rule in *United States* v. *Salvucci*, 448 U.S. 83 (1980), in part because we believed it unfair to place the defendant in the difficult position at the motion to suppress hearing of needing to explain his relationship to the place searched in order to establish his standing to challenge the constitutionality of the search, when that incriminating information may be used to impeach him if he were to testify at trial. The Commonwealth essentially asks that we place the defendant in the same predicament to establish that he had a reasonable expectation of privacy in the place searched. We decline the invitation.

[8]There is an exception to automatic standing where the defendant had no right to be in the house or automobile where the evidence was found. See *Commonwealth* v. *Carter*, 424 Mass. 409 (1997). While in *Commonwealth* v. *Carter, supra* at 412, we concluded that the defendant, who was charged with possession of cocaine found on a porch, could not challenge the constitutionality of the search of the porch because the defendant had been there only in an attempt to avoid apprehension and had no reasonable expectation of privacy in the porch, our holding reflects an exception to the automatic standing rule in circumstances where the defendant was unlawfully on the property searched and where it would be inappropriate to grant him standing to challenge a search of the property. See *id.* ("Not only is the police conduct in this case a far cry from the type of conduct that should be deterred by application of an exclusionary rule in favor of the defendant, but also it would be more than inappropriate to permit a person fleeing from the police to rely on art. 14 [of the Massachusetts Declaration of Rights] to suppress evidence that he left on some third person's property"). Cf. *Commonwealth* v. *Page*, 42 Mass. App. Ct. 943, 944 (1997) (where defendant is charged with mayhem and assault and battery by means of dangerous weapon, "defendant had no reasonable expectation of privacy with respect to [victim's] automobile and therefore no standing to contest its search" where automobile belonged to victim and there was no evidence defendant had right to enter it). We need not address that exception here, because there is no evidence that the defendant was unlawfully in the automobile that was searched.

for State constitutional purposes, we then determine whether a search in the constitutional sense has taken place"). See also *Commonwealth* v. *Williams, supra* at 208. We applied this principle in *Commonwealth* v. *Montanez, supra* at 300-303, where the defendant was charged with trafficking in cocaine. In that case, we granted the defendant standing to challenge the search of the area above the dropped ceiling in the common hallway outside his apartment, but concluded that no one had a reasonable expectation of privacy in the hallway ceiling (that is, that there was no search in the constitutional sense) because "[t]he hallway was a common area, accessible to the public, that was freely and frequently used by people other than the defendant." *Id.* at 302.

Where, as here, automatic standing is applied to the search of an automobile, whether a person's expectation of privacy in a vehicle is reasonable turns on the degree of visibility of the automobile's interior from the outside. See *Commonwealth* v. *Connolly*, 454 Mass. 808, 819 (2009). A reasonable expectation of privacy in a vehicle "clearly exists in those areas which would be otherwise free from observation except by physical intrusion of some sort." *Commonwealth* v. *Podgurski*, 386 Mass. 385, 389 (1982), cert. denied, 459 U.S. 1222 (1983). "In the typical passenger vehicle, these places must include at least the trunk, the glove compartment, closed containers in the interior, and in most cases, the area under the seats." *Id.*

Here, the police entered a parked automobile where the defendant had been sitting in the driver's seat, and inspected areas in the automobile, including the center console where the marijuana was found, that could not be seen without entering the automobile. As a result, the search of the center console inside the automobile, even if conducted during a protective sweep for weapons, was a search in the constitutional sense, and the defendant, because he is charged with possessing the marijuana found in the center console, has automatic standing to challenge the constitutionality of the search. In fact, even without the automatic standing rule, the defendant, who at a minimum was a passenger in the parked automobile, would have standing to challenge the search of the automobile in this case. See *Commonwealth* v. *King*, 389 Mass. 233, 240 (1983), quoting *Commonwealth* v. *Podgurski, supra* at 392 (*Rakas* v. *Illinois*, 439 U.S. 128 [1978], "should not be read to deprive a 'mere' passenger of standing to

object to a search where, but for his lack of a property interest in
the vehicle, his situation is otherwise identical to that of the
owner, who has the requisite standing").

2. *The protective sweep of the automobile.* We turn now to
the question whether the Commonwealth has met its burden of
establishing that, at the time Officer Quiles approached the
defendant with his gun drawn, the investigatory stop was justi-
fied by reasonable suspicion, based on specific and articulable
facts, that the defendant had committed, was committing, or was
about to commit a crime. See *Commonwealth* v. *Depina, ante*
238, 242 (2010); *Commonwealth* v. *DePeiza,* 449 Mass. 367,
369-371 (2007). See also *Terry* v. *Ohio,* 392 U.S. 1, 21 (1968).
Absent such a justification, the stop was unlawful, and the mari-
juana recovered by the police from the protective sweep of the
automobile that occurred during the stop should have been
suppressed. See *Commonwealth* v. *Loughlin,* 385 Mass. 60, 63
(1982); *Commonwealth* v. *Ferrara,* 376 Mass. 502, 505 (1978).

When, as here, police officers on the street stop a defendant
in reliance on a police dispatch, the stop is lawful only if the
Commonwealth establishes both (1) that the information on
which the dispatch was based had sufficient indicia of reli-
ability, and (2) that the description of the suspect conveyed by
the dispatch had sufficient particularity that it was reasonable
for the police to suspect a person matching that description. See
*Commonwealth* v. *Depina, supra* at 243; *Commonwealth* v.
*Lopes,* 455 Mass. 147, 155 (2009). See also *Commonwealth* v.
*Riggieri,* 438 Mass. 613, 615-616 (2003); *Commonwealth* v.
*Mercado,* 422 Mass. 367, 371-372 (1996). Here, the dispatch
contained more than sufficient particularity; it identified the
type of automobile, its color, registration, and location, as well
as the number of individuals inside the automobile, their race,
and their gender. The existence of reasonable suspicion, then,
hinges on whether this highly particularized information bore
adequate indicia of reliability.

To establish the reliability of the information under art. 14,
"the Commonwealth must show the basis of knowledge of the
source of the information (the basis of knowledge test) and the
underlying circumstances demonstrating that the source of the
information was credible or the information reliable (veracity

test)." *Commonwealth* v. *Lopes, supra* at 155-156. See *Commonwealth* v. *Upton,* 394 Mass. 363, 374-375 (1985). "Because the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible." *Commonwealth* v. *Lyons,* 409 Mass. 16, 19 (1990). "Independent police corroboration may make up for deficiencies in one or both of these factors." *Commonwealth* v. *Riggieri, supra* at 615-616, quoting *Commonwealth* v. *Barros,* 435 Mass. 171, 176 (2001).

Because the tape recording of the anonymous 911 call, on which the dispatch was based, was not in evidence at the motion to suppress hearing and was not reviewed by the motion judge, our assessment of the caller's basis of knowledge is necessarily limited to the information provided by the police dispatch. The dispatch declared that the individuals in the Dodge Charger "were observed 15 minutes ago on Lyndhurst St., next [to] the Post Office," which suggests that the dispatcher understood the information to have derived from the caller's observations. The degree of detail provided by the dispatch regarding the automobile and its location, all of which were corroborated by the police officers' own observations, also suggest that the information derived from personal observation rather than hearsay or rumor. See *Commonwealth* v. *Alfonso A.,* 438 Mass. 372, 374 (2003) (confidential informant's recent firsthand observation satisfies basis of knowledge test); *Commonwealth* v. *Alvarado,* 423 Mass. 266, 271 (1996) (anonymous caller's recent firsthand observation satisfies basis of knowledge test). However, even though the information contained in the dispatch indicates that the anonymous caller witnessed the firearm transaction, we ultimately cannot confirm the caller's basis of knowledge without knowing more about what was said during the call. By failing to introduce the 911 call in evidence, the Commonwealth has made difficult what otherwise might have been a straightforward assessment of the caller's source of information.

We need not resolve whether the caller's basis of knowledge was adequately shown to be the caller's personal observations because we conclude that the Commonwealth has failed to establish the caller's veracity. The caller was anonymous, and therefore there was no evidence regarding the caller's past reliability, reputation for honesty, or motivation. See *Commonwealth*

v. *Costa*, 448 Mass. 510, 515 (2007) ("we accord more weight to the reliability of those who are identified"). Moreover, there is no evidence that the caller was identifiable, and therefore no reason to believe the caller needed to fear that he or she would be subject to a charge of filing a false report or any comparable consequence of providing false information to law enforcement. See *id.* ("the reliability of citizen informants who are identifiable, but may not have been identified, is deserving of greater consideration than that of truly anonymous sources"). See also *Florida* v. *J.L.*, 529 U.S. 266, 276 (2000) (Kennedy, J., concurring) ("If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip"). Without the 911 call being offered in evidence, we cannot "conclude that the caller placed his anonymity at risk or was otherwise reliable." *Commonwealth* v. *Gomes*, 75 Mass. App. Ct. 791, 794-795 (2009). In short, we do not know and cannot learn who called, and cannot discern the motive or state of mind of the caller.

The Commonwealth correctly notes that the reliability of an anonymous caller may be demonstrated by police corroboration of the information provided. *Commonwealth* v. *Alvarado, supra* at 271-272. Here, the police confirmed that the caller was accurate in describing the location of the vehicle and the number of men inside. However, the police were unable to corroborate anything beyond these innocent facts, all of which could have been observed by anyone at or around the location of the automobile. See *id.* (corroboration of anonymous caller's information that several Hispanic men were in blue automobile in driveway of particular address did not permit conclusion that caller was also reliable as to uncorroborated information that handgun was seen in automobile); *Commonwealth* v. *Lyons, supra* at 20-21 (corroboration of obvious, innocent details only slightly enhanced reliability of anonymous caller's information). The absence of any corroboration as to the existence of a firearm is especially significant here, where it cannot be certain from the dispatch that the anonymous caller even saw a firearm. According to the dispatch, the caller reportedly "[o]bserved money and an object being passed, believed to be a firearm."

Nor did the caller provide any prediction of the suspects' future behavior that could be corroborated by the police officers and demonstrate the caller's inside knowledge of the suspects'

activities. See *Commonwealth* v. *Bakoian,* 412 Mass. 295, 302 (1992) (police corroboration of nonobvious and predictive details removed any doubt as to informant's reliability); *Commonwealth* v. *Lyons, supra* at 22 ("specific facts which predict behavior [are] central to reasonable suspicion"). The fact that the suspects were parked in a "high-crime" area did not materially bolster the reliability of the caller's information. See *Commonwealth* v. *Sykes,* 449 Mass. 308, 314 (2007) ("mere presence in a high-crime area" not sufficient to justify stop); *Commonwealth* v. *Cheek,* 413 Mass. 492, 496 (1992) (fact that it was high-crime area "contribute[d] nothing to the officers' ability to distinguish the defendant" as suspect). Furthermore, the information from the dispatcher that shots had been fired the night before in the Lyndhurst Street vicinity did not demonstrate an "imminent threat" that could have contributed to the "calculus upon which . . . reasonable suspicion may be determined." *Commonwealth* v. *Doocey,* 56 Mass. App. Ct. 550, 557 (2002). See *Commonwealth* v. *Campbell,* 69 Mass. App. Ct. 212, 216-217 (2007) (test for reasonable suspicion properly considered immediate danger to public safety presented by report of shots just fired and man carrying gun); *Commonwealth* v. *Ancrum,* 65 Mass. App. Ct. 647, 654 (2006) (determination of reasonable suspicion included need for prompt investigation of "imminent threat" presented by report immediately following shooting).

There also was no suspicious activity on the part of the defendant or the other two individuals that "might have heightened police concern" or suggested that a firearm transaction had taken place fifteen minutes earlier. *Commonwealth* v. *Lyons, supra* at 21. See *Commonwealth* v. *Couture,* 407 Mass. 178, 180-181, cert. denied, 498 U.S. 951 (1990). The only behavior that could be arguably characterized as suspicious was that the person who was standing outside the car began to walk away as the police approached. While we consider a suspect's apparent desire to depart from the scene after seeing approaching police officers in evaluating reasonable suspicion, see *Commonwealth* v. *Grandison,* 433 Mass. 135, 139-140 (2001), there was no evidence here that the suspect ran or did anything to suggest that he was carrying a firearm he had just purchased. Cf. *Commonwealth* v. *DePeiza,* 449 Mass. 367, 368, 371 (2007) (defendant walked with

"straight arm" gait that suggested he was carrying firearm by pressing it against his body with his stiff arm); *Commonwealth* v. *Stoute*, 422 Mass. 782, 791 (1996) (defendant's accelerated pace and failure to stop at officer's request contributed to suspicion that gun was in his possession). In fact, we cannot reasonably say that the individual outside the Dodge Charger was fleeing, because he walked in the direction of the approaching police cruiser.

We conclude that, in view of the unknown veracity of the anonymous caller, the absence of corroboration as to all but innocent facts, the lack of any predictive information regarding the suspects that could be corroborated, and the absence of any observed conduct by the suspects more suspicious than the person on the sidewalk walking away from the automobile and toward the police cruiser, the investigatory stop of the defendant and the protective sweep of the vehicle in which he had been sitting were not justified by reasonable suspicion and therefore violated art. 14.[9],[10]

---

[9]Our conclusion that the investigatory stop and protective sweep were not supported by reasonable suspicion would be the same under the Fourth Amendment to the United States Constitution, even though Federal law follows the less exacting "totality of the circumstances" test to determine whether an anonymous tip carries sufficient indicia of reliability to justify an investigatory stop. See *Alabama* v. *White*, 496 U.S. 325, 330 (1990); *Illinois* v. *Gates*, 462 U.S. 213, 230-233 (1983). The information known to the police in the present case approximates that known to the police who conducted the investigatory stop in *Florida* v. *J.L.*, 529 U.S. 266 (2000), where the United States Supreme Court found that the stop was not supported by reasonable suspicion. In that case, the Court held that an anonymous tip that a person was carrying a gun was not, without more, sufficient to justify a police officer's stop and frisk of that person. *Id.* at 268, 274. The prosecution introduced neither an audio recording of the anonymous call nor any other information about the caller. *Id.* at 268. The fact that the tip provided "[a]n accurate description of [the] subject's readily observable location and appearance" made it reliable "in [the] limited sense" that the police could easily and correctly identify the person accused of wrongdoing. *Id.* at 272. It failed to show, however, that the anonymous informant had "knowledge of concealed criminal activity." *Id.* A tip must "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.*

[10]We appreciate the dilemma faced by police officers when they receive a dispatch like that received by the officers in this case, where they are asked to be "on lookout" for specific individuals who reportedly engaged in a firearms purchase based on information provided by an anonymous caller. "When a tip, such as the one received here, concerns the possession of a firearm, it deserves the immediate attention of law enforcement officials." *Commonwealth* v. *Stoute*, 422 Mass. 782, 790 (1996). Yet, neither the United States Constitu-

*Conclusion.* We reverse the denial of the defendant's motion to suppress and remand the case to the Dorchester Division of the Boston Municipal Court Department for further proceedings consistent with this opinion.

*So ordered.*

tion nor the Massachusetts Declaration of Rights recognizes a "firearm exception" that would justify a stop and frisk on something less than reasonable suspicion when the police receive a report of a firearm. *Commonwealth* v. *Alvarado*, 423 Mass. 266, 271 (1996). See *Florida* v. *J.L.*, *supra* at 272. "Such an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun." *Id.*

Without corroboration of something beyond the innocent details provided by the caller, or other information strengthening the level of suspicion, the information furnished by the unknown caller is likely to fall below reasonable suspicion and therefore would not justify an investigatory stop and a frisk for weapons. Yet, if the officers were to initiate a less intrusive encounter with the suspects than an investigatory stop, they would need to approach persons whom the unknown caller said were armed without drawing their guns or immediately conducting a patfrisk. We note that the dispatch in this case did not direct the officers to conduct an arrest or investigatory stop if they saw the suspects; it directed them "at this time" to conduct a field interrogation observation, which we have found to be less intrusive than a constitutional seizure. See *Commonwealth* v. *Lyles*, 453 Mass. 811, 813 n.6 (2009) (" 'field interrogation observation' has been described as an interaction in which a police officer identifies an individual and finds out that person's business for being in a particular area"); *id.* at 813-817. See also *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 387-388, cert. denied, 515 U.S. 1146 (1995) (field interrogation observation was not seizure where police officer on foot approached individuals suspected of gang membership and took notes of their answers to basic questions).