The defendant was convicted by a Boston Municipal Court jury of (1) possession of a firearm without a license, and (2) unlawfully possessing a loaded firearm. The gun in question was found under the cushion and in the corner of a large, weathered chair, located outdoors in a private parking lot at 576-580 Blue Hill Avenue in the Dorchester section of Boston, and on which the defendant had been seated until the police arrived and arrested him. The defendant claims that the search that yielded the gun violated the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, and that even if the search was valid, the evidence presented at trial was insufficient to convict him of possessing the firearm. For the following reasons, we affirm.
1. Facts. We summarize the facts found by the motion judge after an evidentiary hearing, and supplement where necessary with undisputed testimony credited by the judge. See Commonwealth v. Powell, 459 Mass. 572, 574 n.7 (2011), cert. denied sub nom. Powell v. Massachusetts, 565 U.S. 1262 (2012).
On September 8, 2014, at approximately 1:30 A.M. , Boston police Officer James O'Loughlin[2] and his partner, Officer Edward Dervan, were on patrol when they pulled into a large parking lot adjacent to the apartment buildings located at 576, 578, and 580 Blue Hill Avenue. The parking lot was "open for vehicles to pull in and for people to walk in and out of." No one monitored the area and there were no signs prohibiting trespassing or loitering.
Officer O'Loughlin was familiar with this area because he had responded numerous times to the parking lot, including assisting another officer with a firearm arrest, responding to a report of shots fired, and trying to halt a spate of break-ins to the basement of one of the adjacent apartment buildings. Because of the high level of criminal activity in this area, Officer O'Loughlin patrolled the parking lot often.
On the evening in question, when Officer O'Loughlin entered the parking lot he saw the defendant, whom he knew, seated on a large, weathered brown chair; another male, Elvin Pena, sitting on the left arm of that chair; and a third male sitting on a milk crate on the other side of the chair from Pena. Officer Dervan told Officer O'Loughlin that he saw Pena "flick[ ] something" to the ground, and the two officers stopped their vehicle and got out. Officer Dervan went to the area where Pena had flicked the object and recovered a plastic bag of white powder. Officer O'Loughlin approached the defendant.
The defendant had a bottle of rum with the top askew between his feet. Officer O'Loughlin testified that he understood there is a Boston city ordinance that prohibits open containers of alcohol "on public ways where the public has [the] right of access and even on private property without the owner's permission." Based on his understanding of this ordinance, Officer O'Loughlin ordered the defendant to "get up off the chair" so he could "do a search incident to arrest."
The defendant complied but upon standing, he twice tried to reach into his right pants' pocket. Officer O'Loughlin twice commanded him not to do so, and then began a patfrisk. Immediately Officer O'Loughlin felt a small packet that he described as consistent with heroin or crack cocaine. The defendant then stated, "it's personal use." Officer O'Loughlin retrieved the item, which he testified appeared to be a bag of heroin. The defendant then took off his coat and handed it to Officer O'Loughlin, telling him to check the coat. Officer O'Loughlin did so, finding nothing further. The defendant then voluntarily pulled off his sneakers and handed them to Officer O'Loughlin, saying, "[G]o ahead, look, nothing. It's personal."[3]
While this search was ongoing, Pena slid into the chair where the defendant had been sitting. Officer O'Loughlin asked Pena to step out of the chair, and when he stood, Officer O'Loughlin lifted the seat cushion and saw a sock placed in the corner of the chair. Officer O'Loughlin felt the sock and detected a firearm. The object was a fully loaded .22 caliber revolver. Both Pena and the defendant were placed under arrest.
The defendant filed a pretrial motion to suppress, inter alia, the firearm. After an evidentiary hearing, the motion judge denied the motion. Most importantly, the judge ruled that the defendant did not establish a reasonable expectation of privacy in the parking lot chair, so the search of the chair violated no Fourth Amendment or art. 14 interests.
The defendant thereafter stood trial, inter alia, on charges of (1) possessing a firearm without a license, and (2) unlawfully carrying a loaded firearm. The jury returned a guilty verdict on both charges on September 30, 2015.[4]
Discussion. 1. The search and seizure issues. We first address whether the search of the chair, which yielded the gun, violated the Fourth Amendment or art. 14. As the Supreme Judicial Court has made clear, art. 14 and the Fourth Amendment protect privacy interests, so any challenge under these provisions must show an infringement of a person's privacy. See, e.g., Commonwealth v. Rice, 441 Mass. 291, 295 (2004) ; Commonwealth v. Rodriguez, 456 Mass. 578, 590 n.12 (2010), citing Commonwealth v. Mubdi, 456 Mass. 385, 393 (2010). The key issue thus is whether the defendant established any "reasonable expectation of privacy" in the chair. See Commonwealth v. Mubdi, 456 Mass. at 391. We hold that no such interest was shown on the record.
At the outset, we note that our conclusion does not turn on whether the defendant established "standing" to mount a challenge to the search. Our case law is clear that a person has "automatic standing" to contest the lawfulness of a warrantless search where, as here, "possession of the seized evidence ... is an essential element of guilt." Commonwealth v. Amendola, 406 Mass. 592, 601 (1990). But having automatic standing does not necessarily establish a reasonable expectation of privacy in the place searched. As the Supreme Judicial Court explained in Commonwealth v. Mubdi, 456 Mass. at 392-393, the automatic standing cases do not relieve a criminal defendant of the need to show that someone had a protectable privacy interest:
"Where the defendant has automatic standing, the defendant need not show that he has a reasonable expectation of privacy in the place searched.
"...
"The defendant, however, still must show that there was a search in the constitutional sense, that is, that someone had a reasonable expectation of privacy in the place searched, because only then would probable cause, reasonable suspicion, or consent be required to justify the search."
(Emphasis in original).
The defendant failed to show an expectation of privacy here. The chair in question was outdoors, in a parking area that was unguarded, unrestricted, and frequented by residents and nonresidents alike. The evidence was that the weathered chair had been outside for a long time, in the same location. The chair was not in a home or building, or associated with a home or building, and for all that appears in the record it was abandoned. As Mubdi holds, the defendant had the burden to show that someone had a reasonable expectation of privacy in the chair, and no such evidence was adduced. Id. at 392. See Commonwealth v. Montanez, 410 Mass. 290, 301-303 (1991).
Since there was no reasonable expectation of privacy in the chair, it follows that there was no Fourth Amendment or art. 14 violation in searching it, and no basis for suppressing the firearm found in it.[5]
2. Sufficiency of evidence. The defendant also challenges the jury verdict, claiming that there was insufficient evidence to establish his possession of the gun.[6] In evaluating sufficiency, this court determines whether, after viewing the evidence in the light most favorable to the Commonwealth, " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis in original)." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). Accord Commonwealth v. Blevins, 56 Mass. App. Ct. 206, 211 (2002). "Circumstantial evidence is competent to establish guilt beyond a reasonable doubt," and in evaluating the evidence we will consider not only direct evidence but also the "reasonable and possible" inferences, provided they are "not too remote in the ordinary course of events, or forbidden by any rule of law." Commonwealth v. Cotto, 69 Mass. App. Ct. 589, 591-592 (2007) (quotations omitted).
Here the case against the defendant was not based upon actual possession, but upon constructive possession. The defendant was never observed in actual possession of the gun. Nor was there any fingerprint or deoxyribonucleic acid evidence. Our case law has addressed constructive possession on many occasions, in varying fact patterns. To prove constructive possession, it is not sufficient merely to show the defendant was located near the item in question-e.g., illegal drugs or a firearm. As we said in Cotto, 69 Mass. App. Ct. at 592 (quotation omitted): "Presence alone cannot show the requisite knowledge, power, or intention to exercise control over the contraband, but presence supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency."
Here there was sufficient evidence for the jury to find the defendant guilty of possessing the firearm, although we acknowledge the question is a close one. When he was encountered, the defendant was seated on the chair in which the gun was located, and although the gun was not in his actual possession he could easily have reached it, as it was within reach of his left hand. It was 1:30 A.M. in a parking lot frequented by a variety of people, including five other individuals that evening. While proximity to the gun alone is not enough, it can still be powerful evidence, and the jury could readily infer that in those circumstances, the person who possessed the gun likely would stay very close to it, and would not leave it to be found by someone else.
And here, proximity was not the only evidence of possession. The jury also heard about the defendant's behavior when he was arrested. The defendant voluntarily took off his coat, and showed it to the officer. He then voluntarily took off his shoes, although he was in an asphalt parking lot littered with debris. He also "inched" away from the chair, ultimately moving an estimated five feet away. Finally, the jury were told that the arresting officer had interacted with the defendant before the night in question, and that whereas previously the defendant had been "very calm," on this night he was "very nervous and very fidgety."[7]
On this evidence the jury could have drawn reasonable inferences that the defendant's behavior coupled with the location of the gun showed the elements of constructive possession-knowledge of the firearm and the ability and intent to control it. The jury could have inferred that the defendant's behavior-particularly the voluntary removal of his shoes while he moved away from the chair-was intended to distract the officer's attention from the chair and the gun. They could have concluded that the totality of the defendant's actions, including his voluntary removal of the clothing that he offered to the officer and his evident nervousness, showed consciousness of guilt.[8]
In short, there was sufficient evidence here, in addition to the defendant's proximity to the weapon, for the jury to find guilt beyond a reasonable doubt.
Judgments affirmed.

Officer O'Loughlin was the only witness at the evidentiary hearing.

The defendant was charged at the time not only with gun and ammunition possession charges, but also with public drinking, and possession of illegal drugs. The drug charge was dismissed prior to trial, and the trial judge granted judgment notwithstanding the jury verdict on the subsequent public drinking conviction. Because the drug and public drinking charges are not before us on appeal, we do not address the search and seizure issues with respect to the alleged drugs, and specifically we do not confirm that the "arrest" for public drinking was appropriate. We include these facts, however, as they are an integral part of the entire factual narrative.

The jury also found the defendant guilty of violating the Boston ordinance prohibiting public drinking, and of unlawful possession of ammunition. The judge entered judgment notwithstanding the verdict as to the public drinking charge, and the Commonwealth dismissed the possession of ammunition charge at sentencing.

The defendant does not appear to argue, nor could he, that even if there is no reasonable expectation of privacy in the chair, the gun should nevertheless be suppressed as the fruit of the prior, allegedly unlawful, arrest. Here the gun was secreted in the chair before the police took any action that evening. See Commonwealth v. Rodriguez, 456 Mass. at 587 (no fruit of poisonous tree issue if drugs had been dropped on ground in public park before police stopped defendant). See also Commonwealth v. Porter P., 456 Mass. 254, 259 (2010) ("If no one has a reasonable expectation of privacy in the place searched, the police are free to search that place without a warrant and without probable cause, as often as they wish").

The facts adduced at trial were very similar to those adduced at the suppression hearing. At trial, the judge struck testimony that the defendant had drugs on his person, and also struck the statement, "it's personal use." However, the jury heard testimony that Officer O'Loughlin found an "item" in the defendant's coat.

The defendant also argues on appeal that Officer O'Loughlin's testimony at trial regarding prior interactions with the defendant brought in improper evidence of "prior bad acts." The contention is without merit, because the trial judge properly limited the officer's testimony so that he gave no evidence of a prior arrest-merely prior "interactions." There was thus no prior bad acts evidence admitted at trial.

The defendant argues that the evidence points equally to Pena, and cites cases for the proposition that "[w]hen the evidence tends equally to sustain either of two inconsistent positions, neither of them can be said to have been established by legitimate proof" (emphasis supplied). Commonwealth v. Carbello, 33 Mass. App. Ct. 616, 619 (1990). We think the principle inapplicable here, in the context of review of a jury verdict and where, in any event, the propositions are not necessarily inconsistent, as the law would allow the conclusion that both the defendant and Pena were in constructive possession of the gun. See Commonwealth v. Elysee, 77 Mass. App. Ct. 833, 847-849 (2010) (finding evidence sufficient to support finding of constructive possession of firearm by two defendants).
As to the defendant's argument that there was insufficient evidence of the firearm being loaded, we note that the firearm in question was a revolver, that there was testimony the revolver was loaded when seized, and that a photograph of the revolver as seized was introduced in evidence, as was the revolver itself. "Where, as here, the firearm was a revolver ..., a rational jury could infer that those who possessed the firearm knew that it was loaded with ammunition." Commonwealth v. Jefferson, 461 Mass. 821, 828 n.7 (2012).