COMMONWEALTH vs. ZENO WILLIAMS.

Norfolk. December 5, 2008. - February 12, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, & CORDY, JJ.

*Practice, Criminal,* Assistance of counsel, Standing, Capital case. *Constitutional Law,* Assistance of counsel, Search and seizure. *Search and Seizure,* Expectation of privacy, Consent. *Battered Woman Syndrome. Evidence,* Consciousness of guilt.

A criminal defendant failed to demonstrate that her trial counsel had rendered ineffective assistance by failing to argue, in support of a motion to suppress evidence, that the defendant's mother lacked authority to consent to a search of the defendant's personal papers left in the basement of a multifamily residential rental property owned by the mother, where the defendant had no reasonable expectation of privacy in the basement, given that she did not own the area or have a lease or other property interest in the area; that she lacked permission to stay there; that she did not control access to the area, to which tenants and family members had access through an unlocked door; and that her mother neither knew of nor consented to the defendant's presence as a "squatter" in the basement. [205-211]

A criminal defendant convicted of murder in the first degree failed to demonstrate that her trial counsel had rendered ineffective assistance by failing to introduce certain records during redirect examination of an expert witness to corroborate the defendant's claim that she suffered from battered women's syndrome at the time of her flight from the scene, where the substance of such records was already abundantly established before the jury. [211-213]

INDICTMENT found and returned in the Superior Court Department on February 28, 2002.

A pretrial motion to suppress evidence was heard by *Isaac Borenstein*, J.; the case was tried before *Judith Fabricant*, J., and a motion for a new trial, filed on September 11, 2006, was heard by her.

*Leslie W. O'Brien* for the defendant.

*Pamela Alford*, Assistant District Attorney, for the Commonwealth.

COWIN, J. A Superior Court jury convicted the defendant,

Zeno Williams, of murder in the first degree on theories of deliberate premeditation, extreme atrocity or cruelty, and felony-murder.[1] She was also convicted of armed robbery. Represented by new counsel, the defendant appeals from her convictions and from the denial of her motion for a new trial, claiming that she was denied the effective assistance of counsel in two respects: counsel should have argued, in support of a motion to suppress evidence, that the defendant's mother lacked authority to consent to a search of the defendant's personal papers; and counsel should have introduced evidence to corroborate the defendant's claim that she suffered from battered women's syndrome at the time of her flight from the murder scene.[2] She also requests that we exercise our extraordinary power to reduce the verdict pursuant to G. L. c. 278, § 33E. We affirm the convictions and the order denying the motion for a new trial, and we decline to exercise our power to reduce the verdict.

Based on the evidence at trial, the jury could have found that the defendant and Jamaal Haith killed Manuel Andrade (victim) in his Stoughton apartment on January 22, 2002. Haith, who was the defendant's former boy friend and the father of her two children, was convicted of murder in the first degree in a separate trial, and his conviction was affirmed by this court. See *Commonwealth* v. *Haith*, 452 Mass. 409 (2008). It is unnecessary to recount the evidence concerning the murder for resolution of the defendant's claims. We recount relevant facts in the course of this opinion.

As indicated, the defendant's arguments (other than her request for relief pursuant to G. L. c. 278, § 33E) pertain to ineffective assistance of counsel. Because the defendant has been convicted of murder in the first degree, we consider her contention of ineffectiveness of counsel to determine whether there exists a substantial likelihood of a miscarriage of justice, pursuant to G. L. c. 278, § 33E, which is more favorable to a defendant than the constitutional standard for determining whether there has been ineffective assistance. *Commonwealth* v. *Wright*, 411 Mass. 678,

---

[1]After trial, the Commonwealth nol prossed a conspiracy charge on which the defendant had been indicted.

[2]The claims raised by the defendant are the same as those raised in the motion for a new trial.

681-682 (1992). Thus, we consider whether there was error during the course of the trial, and, if so, whether the error was "likely to have influenced the jury's conclusion." *Id.* at 682. Under this more favorable standard of review, we consider a defendant's claim even if the action by trial counsel does not "constitute conduct falling 'measurably below' that of an 'ordinary fallible lawyer.' " *Commonwealth* v. *MacKenzie,* 413 Mass. 498, 517 (1992), quoting *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). A strategic decision by an attorney, however, amounts to ineffective assistance "only if it was manifestly unreasonable when made." *Commonwealth* v. *Coonan,* 428 Mass. 823, 827 (1999), quoting *Commonwealth* v. *Martin,* 427 Mass. 816, 822 (1998).

1. *Search of basement.* The defendant's mother, Henrietta Williams (Henrietta),[3] owned a multifamily residential rental property in Medford but did not live there. At one point after the murder, the police learned that the defendant was staying in the basement of that building. After obtaining Henrietta's consent to search the basement area, the police did so and seized papers belonging to the defendant.

Prior to trial, defense counsel filed a motion to suppress all physical evidence seized from the basement area of the Medford property.[4] The hearing on the motion focused on whether the search was valid because consent to the search of the basement had been given by Henrietta. The motion to suppress was denied.[5] However, the precise question which the defendant now raises, whether consent to the search of the basement extended to a search of the defendant's personal papers, was not separately argued. The defendant contends, both in her motion for a new trial and in this appeal, that the lack of an argument at the hearing on the motion to suppress addressed specifically to the seizure of her personal papers constituted ineffective assistance of counsel. Without determining whether the absence of such an argument was meaningful otherwise, we conclude that the claim of ineffective assistance has no merit because, on this record, the defendant lacked a reasonable expectation of privacy in the base-

---

[3]We refer to the defendant's mother as Henrietta to distinguish her from the defendant.

[4]The motion sought to suppress other evidence as well.

[5]A judge other than the trial judge acted on the motion to suppress.

ment and consequently had no right to suppression of the seized evidence in any event.

The facts concerning the search of the basement appear in the decision of the trial judge on the motion for a new trial, and these facts are essentially undisputed.[6] After the murder of the victim on January 22, 2002, the police informed Henrietta that they had obtained warrants for the arrest of the defendant and Haith. Approximately one month later, on February 20, 2002, Henrietta notified the police that "someone might be staying in the basement" of a building she owned at 80 Morton Avenue in Medford. When asked if the person staying there was the defendant, Henrietta stated that she "never saw [the defendant] at the building." Henrietta gave the police permission, both orally and in writing, to enter and search the basement. The signed form authorized the police "to conduct a complete search of the premises and property, including all buildings and vehicles, both inside and outside of the property located at 80 Morton Ave., Medford," and to "take from my premises and property any letters, papers, materials or any other property or things which they desire as evidence for criminal prosecution in the case or cases under investigation."

After obtaining this consent form, the police went to 80 Morton Avenue in Medford the same day. Pursuant to instructions from Henrietta, they entered the basement through an unlocked rear door. The area was unfinished, made of concrete, and "dark like a cellar," with "storage throughout." There was a mattress and some clothing in the back. In that location the police found a letter addressed to the district attorney of Norfolk County and signed by the defendant, credit cards belonging to the victim, a diary, and clothing. The police seized these items.

In the decision on the motion for a new trial, the trial judge noted that additional relevant information was available to defense counsel in police reports. (This information is relevant to establishing the length of time the defendant had been living in the basement.) One such report indicated that on February 20, 2002, one of the defendant's sisters called Detective Robert Welch of the Stoughton police department and asked him to

---

[6]In deciding the motion for a new trial, the trial judge adopted the findings made by the judge who decided the motion to suppress.

come to her mother's home in Brockton. At the Brockton home, the defendant's sisters reported to the police that their mother owned a multifamily building in Medford, that they had checked it in early February, and that "everything was fine" at that time. When they visited the building on February 19, 2002, however, they saw clothing in the common cellar, including items they recognized as the defendant's. They said they had not seen the defendant and did not know how long she had been there.

At trial, the Commonwealth introduced in evidence the following items that were discovered in the search of the basement: the victim's credit card; the letter addressed to the district attorney of Norfolk County; bus ticket receipts in the name of the victim for travel on January 29 and February 1, 2002 (by which time he had been dead for some time); and a note with a Fayetteville, North Carolina, telephone number on it. (Haith had been found and arrested in Fayetteville, North Carolina.) As the trial judge stated, the letter addressed to the Norfolk County district attorney "generally pointed to a person other than the defendant and Haith as the murderer." The letter was significant because it was inconsistent both with a statement the defendant had given to the police and with her trial testimony. The judge concluded that the defendant had no reasonable expectation of privacy in the area searched.

To prevail on her claim of ineffective assistance of counsel in regard to the motion to suppress, the defendant must demonstrate both that the argument regarding consent would have been successful and that counsel's failure to make that argument, and thus obtain suppression of the evidence resulting from the search, created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). The defendant has not met either prong of the test.

The defendant challenged the search and seizure as one violative of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.[7] Under art. 14, we determine initially whether the defendant has standing to contest the search

---

[7] The defendant referred in her motion to suppress to art. 12 of the Massachusetts Declaration of Rights; we assume that the reference was intended to be to art. 14.

and then whether she had an expectation of privacy in the area searched. Although the two concepts are interrelated, we consider them separately.[8] See *Commonwealth* v. *Morrison*, 429 Mass. 511, 513-514 (1999). A defendant has standing either if she has a possessory interest in the place searched or in the property seized or if she was present when the search occurred. See *Commonwealth* v. *Genest*, 371 Mass. 834, 836 (1977). Here, the defendant has a possessory interest in her papers sufficient at least to grant her standing. See *Commonwealth* v. *Deeran*, 364 Mass. 193, 195 (1973).

To decide whether the defendant's constitutional rights were violated, we must decide whether a search in the constitutional sense occurred. See *Commonwealth* v. *Frazier*, 410 Mass. 235, 244 n.3 (1991). This depends on whether the police conduct "has intruded on a constitutionally protected reasonable expectation of privacy." *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991). We determine whether the defendant has a reasonable expectation of privacy by considering "(1) whether the defendant has manifested a subjective expectation of privacy in the object of the search and (2) whether society is willing to recognize the expectation as reasonable." *Id.*, and cases cited. To determine the reasonableness of one's expectation of privacy, we consider several factors, including the character of the location involved; whether the defendant owned or had other property rights in the area at issue; whether the defendant controlled access to the area; and whether the area was freely accessible to others. See *Commonwealth* v. *Welch*, 420 Mass. 646, 653-654 (1995). "[A]n individual can have only a very limited expectation of privacy with respect to an area used routinely by others." *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 742 (1981).

In applying these factors to this case, we conclude that the judge ruled correctly that the defendant lacked a reasonable expectation of privacy in the basement area in which she had

_____

[8]Federal law has merged the standing analysis with the substantive rights protected by the Fourth Amendment and considers only the issue whether a search occurred for Fourth Amendment purposes. See *United States* v. *Salvucci*, 448 U.S. 83, 92-93 (1980); *Rakas* v. *Illinois*, 439 U.S. 128, 138-139 (1978).

deposited some possessions. The defendant clearly did not own the area, nor did she have a lease or other property interest. She lacked permission to stay there. Nor did she control access to the area: the tenants of the building used the basement for storage; members of the defendant's family had access for maintenance or other purposes; and other people apparently could enter, as the police did, by going through an unlocked door. The judge was correct to conclude that any subjective expectation of privacy the defendant may have had was not objectively reasonable. See *Commonwealth* v. *Welch, supra* at 654 (no reasonable expectation of privacy where defendant shared room in common with other fire fighters and lacked ability to exclude others from room); *Commonwealth* v. *Montanez, supra* at 301-302 (even if defendant had subjective expectation of privacy in space above hallway ceiling, expectation not reasonable where hallway was common area open to public and defendant neither owned nor controlled space). See also *Commonwealth* v. *Hawkins,* 139 F.3d 29, 32 (1st Cir.), cert. denied, 525 U.S. 1029 (1998) ("It is now beyond cavil in this circuit that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building"). Once it is determined that the defendant had no reasonable expectation of privacy in the basement area, she cannot challenge the police action that occurred there.

Despite the defendant's contention that she could have acquired a reasonable expectation of privacy in the circumstances as a "squatter," the same principles apply to "squatters" (people living in premises where they have no legally recognizable property interest). Their mere presence on the property does not create a reasonable expectation of privacy. See, e.g., *United States* v. *McRae,* 156 F.3d 708, 711 (6th Cir. 1998) (squatter who lived one week in vacant premises he did not own or rent had no legitimate expectation of privacy to challenge search of abandoned home); *United States* v. *Gale,* 136 F.3d 192, 195-196 (D.C. Cir. 1998) (defendant who changed locks on apartment rented to another and used premises for packaging drugs did not have legitimate expectation of privacy in apartment because he had no legal authority to be there); *Zimmerman* v. *Bishop Estate,* 25 F.3d 784, 787 (9th Cir.), cert. denied, 513 U.S. 1043 (1994) (squatter in residential home had no objectively reasonable expectation of

privacy because no legal right to occupy home); *United States* v. *Dodds*, 946 F.2d 726, 728-729 (10th Cir. 1991) (squatter had no reasonable expectation of privacy in vacant apartment in which he had been sleeping; "hardly more than a fugitive presence would not be one that could be accepted by society"); *Amezquita* v. *Hernandez-Colon*, 518 F.2d 8, 10-12 (1st Cir. 1975), cert. denied, 424 U.S. 916 (1976) (squatters had no reasonable expectation of privacy where they had no legal right to occupy land and build structures on it); *Whiting* v. *State*, 389 Md. 334, 353-363 (2005) (squatter had subjective expectation of privacy in city-owned house where he had lock on door of room in which he stayed, but expectation not objectively reasonable and thus he lacked standing to challenge searches); *Odoms* v. *State*, 714 P.2d 568, 570 (Nev. 1986) (defendant lacked legitimate expectation of privacy and lacked standing to challenge search and seizure in hotel room; he had entered room in which he was sleeping through unlocked door; room had been vacated by former registered guest who had left door unlocked).

Circumstances can be such that a squatter may develop rights, for example, by the property owner's acquiescence to his presence. See *State* v. *Dias*, 62 Haw. 52, 55 (1980) (squatters on State-owned land had reasonable expectation of privacy to challenge search where State acquiesced in the "squatting" for "considerable" time). The defendant seeks support from the concept embodied in the *Dias* case to claim that she was more than a "squatter," that her family acquiesced in her presence in the basement for at least a day, and that this was sufficient evidence to create a reasonable expectation of privacy in the premises. However, as the judge concluded, the record did not demonstrate that Henrietta, the owner of the property, knew that the defendant was staying in the basement or delayed contacting police. At most, the evidence indicates that the defendant's sisters inferred the defendant's presence from their view of her clothing and a makeshift bed in the basement, and that, within the next twenty-four hours, they conveyed that information to Henrietta who in turn notified the police (also within that twenty-four hour time span). Even if Henrietta was aware of the defendant's presence in the basement for one full day before notifying the police, that knowledge does not constitute consent to the defendant's presence that would create a reasonable expectation of privacy. As the trial judge

stated, "such passive sufferance for a period of hours [does not] transform[] a squatter into a guest." Cf. *Minnesota* v. *Olson*, 495 U.S. 91, 99 (1990) (status as houseguest is alone sufficient to show guest had expectation of privacy society recognizes as reasonable).[9]

The parties focus on whether Henrietta's consent to search the basement encompassed the letter, which, the defendant argues, may have been in a sealed envelope. Assuming without deciding that the letter was in a sealed envelope, which the police opened, these arguments are of no consequence on the present record. Once it is determined that the defendant had no reasonable expectation of privacy in the basement, she has no right in the papers she had left there, and there is no search in the constitutional sense.[10]

2. *Battered women's syndrome.* The defendant's second assertion of ineffective assistance concerns her claim that she fled to North Carolina with Haith because she was a victim of battered women's syndrome. It was important to the defense to justify her flight because she claimed that she was unconscious when the murder occurred. Her flight with Haith, however, could be viewed as evidence of consciousness of guilt on her part, and thus inconsistent with her defense. A psychologist testified for the defendant that she exhibited symptoms of battered women's syndrome and that women suffering from this syndrome often stay with their abusers because of fear that they may be harmed or killed if they try to leave. The prosecutor cross-examined the psychologist briefly, making the point that the psychologist's diagnosis depended on the accuracy of the defendant's reports to him and to others that she had in fact been abused by Haith. The present claim is that defense counsel was ineffective for failing to introduce evidence during redirect examination that the psychologist had obtained corroboration of the defendant's complaints in the form of Haith's guilty pleas to beatings of the defendant. According to the defendant, this corroboration would have rebutted

---

[9]The defendant's reliance on *State* v. *Mooney*, 218 Conn. 85, cert. denied, 502 U.S. 919 (1991), is misplaced. The defendant was not living in the open or as a homeless person but in her mother's property without the latter's consent.

[10]The defendant's citations to cases such as *United States* v. *Infante-Ruiz*, 13 F.3d 498, 502 (1st Cir. 1994), provide no support. These cases are concerned with the issue of "consent," and consent is meaningful to a defendant only when she has a reasonable expectation of privacy.

the prosecutor's proposition that the psychologist's own opinion was based on nothing but the defendant's own self-serving reports.

We are not persuaded. Assuming that the records would have been admissible, the substance of such records was already before the jury. Two Commonwealth witnesses, including one of the primary investigating officers, testified that Haith had abused the defendant and had been prosecuted and incarcerated for doing so. A State trooper testified to a statement that the defendant had made to him after her arrest. In repeating that statement, the trooper said that "she described [Haith] as an evil and violent person," who had assaulted her many times and had also assaulted members of his family and had endangered their children. The trooper also testified, in response to cross-examination, that the defendant had told him that Haith had been arrested three times for battering her and the children, and that he had been incarcerated as a result of being convicted for domestic abuse of her. To defense counsel's question, "Did you verify that she, indeed, was telling you the truth," the trooper responded (without objection) that he had "verified that Mr. Haigh [*sic*] had spent time in the Plymouth House of Correction for — for battering — for domestic assault and battery" on the defendant. A second Commonwealth witness, Haith's aunt, testified that Haith had been released from jail "on domestic violence." In addition, the defendant testified at length about Haith's abuse of her and her children. In his cross-examination of the defendant, the prosecutor did not challenge her testimony regarding this abuse, nor did he suggest in closing argument that it did not occur.

Accordingly, the fact that the defendant suffered from abuse by Haith was abundantly established, and the jury could have had no doubt as to this fact. Moreover, the psychologist himself testified on direct examination that, in connection with his evaluation of the defendant, he had "looked at restraining orders that had been brought and arrests involved with those restraining orders," "Department of Social Services investigations around those restraining orders," police reports of assaults on the defendant, interviews with the defendant, and other material. Thus, there was evidence that the psychologist, in evaluating the defendant, had examined information about Haith's abuse of her. That defense counsel may have chosen not to repeat this information after the

Commonwealth's brief cross-examination of the psychologist was not manifestly unreasonable. The judge concluded correctly that the "lack of the records had no effect on the outcome, because the substance of the information contained in them was fully presented to the jury, and was essentially undisputed." The factual basis of battered women's syndrome was adequately presented in the evidence, and it was for the jury to accept or reject both the factual basis and the expert's opinion that the defendant suffered from that condition. The jury were also free to decide whether to accept or reject the proposition the defendant ultimately wanted them to adopt — that the reason for the defendant's flight was because of the syndrome and not because of her consciousness of guilt with respect to the homicide.

3. *G. L. c. 278, § 33E.* We have considered the entire record pursuant to our obligation under G. L. c. 278, § 33E. There is no reason to exercise our authority to reduce the jury's verdict on the murder charge or to order a new trial.

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*