## COMMONWEALTH *VS.* JERMAINE HOLLEY.

No. 09-P-2043.

Bristol. January 11, 2011. - May 17, 2011.

Present: BERRY, WOLOHOJIAN, & HANLON, JJ.

*Practice, Criminal,* Motion to suppress, Findings by judge, Voluntariness of statement. *Evidence,* Admissions and confessions, Voluntariness of statement. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights, Search and seizure, Standing to question constitutionality. *Search and Seizure,* Affidavit, Warrant, Expectation of privacy, Standing to object.

A Superior Court judge erred in allowing a criminal defendant's pretrial motion to suppress statements he made to police during an interview, where, as to the ground that the Miranda rights were inadequate, i.e., spoken too quickly and difficult to discern, an audio-visual recording of the interview showed that the defendant's waiver of his Miranda rights was a knowing, voluntary, and intelligent act [543-546]; and where, as to the implicit suggestion in two comments by the police that the defendant had been identified near the scene of the crime by two witnesses, the comments did not give rise to such trickery or deception as to have overcome the defendant's rational intellect and free will so that his statements were not the result of a free and voluntary act [546-548].

There was no error in the denial, without an evidentiary hearing, of a criminal defendant's pretrial motion to suppress evidence discovered by police in an unsecured box in a common basement area of an apartment building in which the defendant's girl friend resided, where, even assuming the defendant had standing, the affidavits of neither the defendant nor his girl friend set forth facts that would demonstrate a reasonable expectation of privacy in the box [548-553]; and where the issue whether the defendant had an expectation of privacy was addressed, in addition to the issue whether the defendant had standing, at the nonevidentiary hearing held on the motion to suppress [553].

INDICTMENT found and returned in the Superior Court Department on June 29, 2007.

Pretrial motions to suppress evidence were heard by *David A. McLaughlin,* J., and *D. Lloyd Macdonald,* J.

Applications for leave to prosecute interlocutory appeals

were allowed by *Francis X. Spina,* J., and *Ralph D. Gants,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeals were reported by them to the Appeals Court.

*Kristen L. Spooner,* Assistant District Attorney, for the Commonwealth.

*Robert S. Sinsheimer* for the defendant.

BERRY, J. This interlocutory appeal is from two suppression orders: the Commonwealth appeals from an order suppressing certain statements of the defendant, and the defendant cross-appeals from an order denying his motion to suppress evidence seized in a search. We consolidated the appeals.

The case involves an indictment for murder in the first degree, in which the defendant was charged with the homicide of Suzy Goulart. In brief summary, with additional facts provided as pertinent to the respective suppression rulings, the background is that, on April 16, 2005, following a report of a fire at Pleasant View apartments, number 21D, Fall River police discovered Goulart's dead body on the kitchen floor. She had suffered more than fifty stab and cutting wounds.

The Commonwealth, in its appeal, argues that the first Superior Court judge erred in granting the defendant's motion to suppress statements by the defendant in an interview conducted at the police station on April 21, 2005. We conclude that suppression was not warranted. The defendant, in his appeal, argues that a second Superior Court judge erred in not conducting an evidentiary hearing before denying the defendant's motion to suppress physical evidence — in particular, a pair of the defendant's Adidas brand sneakers — which was seized in an October 22, 2008, search of a box in the basement of an apartment to which the defendant's girlfriend had moved following his April 21, 2005, arrest. We affirm the ruling denying the defendant's suppression motion.

A. *The Commonwealth's appeal.* Having been designated a person of interest in connection with the murder, on April 21, 2005, the defendant was arrested on outstanding warrants in unrelated cases. The police interviewed the defendant at the police station. The interview was recorded with audio-visual equipment. See *Commonwealth* v. *DiGiambattista,* 442 Mass. 423, 447-449 (2004). The defendant asserted in his suppression

motion that the statements were subject to exclusion on two grounds: (1) the Miranda warnings were inadequate, and (2) the statements were involuntary because the police had engaged in trickery by suggesting that witnesses had seen the defendant near the apartment of the murder victim. We address each point.

1. *The Miranda warnings.* The ultimate findings that underlie the first judge's suppression order, based on a Miranda violation, are subject to heightened appellate review, in that we "conduct an independent review of his ultimate findings and conclusions of law." *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). Here, the judge's ultimate findings were that the Miranda rights were spoken too quickly by State Trooper Eric Swenson and, in the judge's words, were difficult to discern "in real time." The judge noted that, while watching the recording, he could not "determine, without the transcript, which rights were, in fact, provided." On this basis, the judge concluded that the Miranda warnings would not have been understandable by the defendant, and therefore, the defendant's Miranda waiver was not knowingly and intelligently made. Accordingly, the judge suppressed the defendant's statements from the April 21, 2005, interview.[1]

While we independently review ultimate findings leading to conclusions of law, usually, "[i]n reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error." *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004). In this case, however, "the judge's findings are based almost exclusively on the [recording] of [the defendant's interview], and 'we are in the same position as the . . . judge in viewing the videotape.' " *Commonwealth* v. *Novo*, 442 Mass. 262, 266 (2004), quoting from *Commonwealth* v. *Prater*, 420 Mass. 569, 578 n.7 (1995). "Therefore, we will 'take an independent view' . . . and make judgments with respect to [the] contents [of the interview] without deference to the fact finder." *Ibid.*, quoting from *Commonwealth* v. *Bean*, 435 Mass. 708, 714 n.15 (2002).[2]

---

[1]The judge denied suppression of the defendant's statements on December 19, 2006, while the defendant was being held at a house of correction following his arrest, finding the Miranda warnings were given in the correct manner in this interview.

[2]In allowing suppression of the defendant's statements at the April 21,

Having reviewed the recording of the police interview,[3] and applying these standards for independent appellate review, we are not persuaded that the oral recitation of the four Miranda warnings by Trooper Swenson would not have been comprehensible to the defendant. Notwithstanding that the trooper spoke at a rapid pace, the defendant in three separate ways acknowledged that he understood the oral warnings, that is, (1) immediately following the trooper's recitation of the Miranda rights, when the defendant was asked whether he understood the Miranda rights that just had been delivered orally, the defendant nodded in the affirmative; (2) after the oral warnings, the trooper indicated that if the defendant understood his Miranda rights, but still was willing to speak to the interviewing officers, the defendant should sign a written Miranda waiver form; again the defendant acknowledged that he understood, and signed the waiver form; and (3) as the defendant signed the Miranda waiver form, the defendant stated, "I know how it goes." This comment may be considered in light of the defendant's prior involvement in criminal investigations and the prosecution process, including, but not limited to, criminal practice involving the outstanding warrants for which the defendant had been arrested. A defendant's "experience with and in the criminal justice system" is a factor to consider in weighing whether the defendant understands Miranda warnings, waives them, and gives a statement knowingly, intelligently, and voluntarily. *Novo, supra* at 267, quoting from *Commonwealth* v. *Mandile,* 397 Mass. 410, 413 (1986).

---

2005, interview, the judge also commented that the oral warnings did not contain the so-called "fifth" warning that the defendant may stop answering questions at any time, and that the defendant inaccurately was told that the warnings on the written Miranda waiver form were the same as the oral warnings. That the fifth warning was not given orally does not warrant suppression here — this is especially true in light of the inclusion of the extra fifth warning on the written waiver. "We do not require that [a] defendant be informed of his right to terminate questioning, a so-called 'fifth' Miranda warning." *Commonwealth* v. *Silanskas,* 433 Mass. 678, 688 n.11 (2001).

[3]In our review of the recording, Trooper Swenson can be heard to state as follows: "Before we talk to you, everybody we talk to, we've got to tell them their Miranda rights. [(1)] You've got the right to remain silent, [(2)] everything you say can and will be used against you in a court of law. [(3)] You've got the right to an attorney, to have an attorney present during questioning. [(4)] If you can't afford an attorney, one will be provided for you by the courts and he may be present during questioning. So, you understand all that?"

Given the foregoing, we conclude that the defendant's waiver of his Miranda rights was a knowing, voluntary, and intelligent act.

2. *The alleged law enforcement ruse and voluntariness of defendant's statements.* In the memorandum of decision allowing suppression of the statements, the first judge referred to the police falsely telling the defendant that he had been identified as being near the victim's apartment on the night of the murder by two sources, i.e., by a woman hanging out her laundry and by a family.

Although the judge spoke of identification, the references in the police interview do not refer to actual identification per se but, rather, are more oblique.[4] Notwithstanding that, we will

---

[4]The exchange is as follows:

TROOPER: "I'm wondering if maybe you're afraid to admit you were around that project on Saturday 'cause you're afraid that we're going to pin the murder on you. You understand that we spoke to people who live in the same building as Suzy. Do you remember the woman Saturday afternoon, the black woman that was hanging her clothes out, her laundry out, when you came by the building? You said 'hi' to her before you went in."

DEFENDANT: [Shakes head.]

. . .

DEFENDANT: "I wasn't by there on Saturday. Friday was my last day there."

TROOPER: "Do you know the black woman I'm talking about that was hanging her laundry out in the afternoon on Saturday? You went in the back entrance to the . . . ."

DEFENDANT: "Back hallway?"

TROOPER: "Yeah."

DEFENDANT: "I know the entrance in the hallway you're talking about, but I don't recall going there on no Saturday."

TROOPER: "Let me ask you this. You remember a black lady hanging out her laundry?"

DEFENDANT: "No." [Shakes head.]

TROOPER: "Maybe you're getting your days screwed up."

DEFENDANT: "No, I never get my days screwed up. My day or my month or time. I'm always precise about that."

accept as implicit the suggestion in the police comments that a woman hanging her laundry and a family saw the defendant. Still, the two comments did not, we believe, give rise to such a trickery or deception as to have overborne the defendant's free will, rendering the defendant's statements involuntary. "A statement is voluntary if it is the product of a 'rational intellect' and a 'free will.' " *Commonwealth* v. *Selby*, 420 Mass. 656, 662 (1995), quoting from *Commonwealth* v. *Davis*, 403 Mass. 575, 581 (1988).

> "[W]hile the use of false statements during interrogation is a relevant factor on both waiver and voluntariness, such trickery does not necessarily compel suppression of the statement. Rather, the interrogator's use of trickery is to be considered as part of the totality of the circumstances, the test that is used to determine the validity of a waiver and the voluntariness of any statement. Close analysis of our case law on the subject of trickery suggests that where the use of a false statement is the *only* factor pointing in the direction of involuntariness, it will not ordinarily result in suppression, but that if the circumstances contain additional indicia suggesting involuntariness, suppression will be required."

TROOPER: "You know there's a white family that lives on the first floor?"

DEFENDANT: "I don't know. I don't know everybody in the projects. I just go up the top of the hill. Top of the hill. [Inaudible] people who live around there."

TROOPER: "Well, this is the problem. The white family lives on the first floor and they were in the doorway sometime around nine o'clock or so. Do you remember seeing them that night when you went into the building? They were having cigarettes by the back door."

DEFENDANT: "No. Don't recall."

TROOPER: "It looks bad when there's small details that we already know that are true that you won't admit to. If somebody's saying they saw you in a certain spot, I mean they saw you, no big deal. Can't do anything about that. But it looks bad for you if you say you weren't there when we know you were. Now we're saying, 'Well gees, what's he trying to hide? Is he just going by to say "hi" or is he going by to do a murder?' You know what I'm saying? I'm not psychic . . . ."

*Commonwealth* v. *DiGiambattista*, 442 Mass. at 432-433 (citations omitted).

Considering the totality of the circumstances, including the words and actions of the defendant in the police interview recording (and including, but not limited to, the defendant's acknowledgments that he understood the Miranda warnings), we are unconvinced — even assuming the suggestion of identification by the police — that the defendant's rational intellect and free will were overcome such that his statements were not the result of a free and voluntary act. See generally *Commonwealth* v. *Selby*, 420 Mass. at 662 & n.1 (despite false statement about suspect's handprint being found at crime scene, Miranda waiver and confession both voluntary where "all other relevant factors specific to the instant case indicate a voluntary waiver was made" and trickery was only factor suggesting involuntariness); *Commonwealth* v. *Edwards*, 420 Mass. 666, 671 (1995) (confession admissible where nothing other than use of trickery would suggest involuntariness). Thus, the first Superior Court judge erred in allowing the defendant's motion to suppress statements from the April 21, 2005, interview.

B. *The defendant's appeal.* The defendant filed motions to suppress physical evidence seized during two separate searches. One motion to suppress challenged the October 22, 2008, search of an apartment on Flint Street in Fall River, where the defendant's girlfriend had moved after the defendant's arrest on April 21, 2005. The defendant's motion to suppress this search was denied. That denial of suppression directed at the Flint Street search is the subject of the defendant's interlocutory appeal discussed herein.

There was another motion to suppress in which the defendant also challenged the April 22, 2005, search of the apartment at 671 Durfee Street in Brockton, where the defendant had been living with the girlfriend at the time of his arrest. This portion of the defendant's motion to suppress was denied by a third Superior Court judge on the basis that the search of the Durfee Street apartment had been consented to by the girlfriend. This suppression ruling is not the subject of this interlocutory appeal. To be noted, however, is that photographs taken during this Durfee Street search showed a pair of sneakers that appeared to

be similar in design to the particular Adidas brand sneaker that the Federal Bureau of Investigation (FBI) forensic laboratory determined most likely would be the match to certain footprint impressions found at the murder scene.

We turn to the search at issue in this appeal, i.e., the October 22, 2008, search when police executed a warrant at 37 Flint Street in Fall River, the place where the girlfriend had moved following the defendant's arrest.[5] During the execution of the warrant, the police entered a common basement area in the apartment building. There the police found and opened a box left by the girlfriend, and from within this box[6] the police seized a pair of sneakers that appeared to be the Adidas brand identified by the FBI as likely matching the size and tread of bloody footprints found at the murder scene.

The defendant contends that the second Superior Court judge erred in not holding an evidentiary hearing on his motion to suppress evidence obtained in the Flint Street search. Such an evidentiary hearing was not warranted for two reasons. First, the affidavits filed in support of the motion to suppress were not sufficient to prompt an evidentiary hearing. Second, the motion judge held a lengthy nonevidentiary hearing on the suppression issues, and heard argument of counsel concerning the dual issues of standing and expectation of privacy. Based on the

[5]Part of the information used to apply for the search warrant for the Flint Street apartment was based on the photographs taken at the Durfee Street apartment search, as well as the FBI footprint analysis.

[6]The girlfriend signed a consent form for the basement search, but not specifically for the box itself. In the suppression proceedings below, the defendant challenged the validity of the consent, and whether the police had entered the basement prior to obtaining such consent. However, that consent challenge was not fully developed. Instead, virtually the entire focus of the suppression hearing, as well as the judge's suppression order, was not on the consent question but, rather, on the defendant's standing and on the expectation of privacy issue concerning the common basement. We follow that course in this appeal. Indeed, a consent challenge is not pursued in this appeal. The major part of the defendant's brief is directed to the need for an evidentiary hearing concerning the privacy issue vis-à-vis the basement area. It is only in passing that the defendant in his brief claims that the girlfriend did not consent to the basement search. The passing reference in the defendant's brief to the consent issue as warranting an evidentiary hearing does not meet the standards for appellate briefing under Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Accordingly, we deem this challenge waived.

information presented, including discussion of the affidavits, the judge ruled that the defendant had standing, but that the defendant's motion was not supportable because there was no reasonable expectation of privacy in the common basement area searched. The defendant's suppression motion was denied by the judge without the taking of evidence. We agree with the second judge's ruling. We address each of the defendant's contentions.

1. *Inadequacies in the affidavits supporting the search warrant.* We turn first to the affidavits. A defendant filing a suppression motion pursuant to Mass.R.Crim.P. 13(a)(2), as appearing in 442 Mass. 1516 (2004), must file an affidavit detailing all facts relied upon in support of the motion.

> "Where a defendant has filed a motion to suppress alleging an unconstitutional search or seizure, the detail required in the motion and accompanying affidavit under rule 13(a)(2) must be sufficient to accomplish two practical purposes. First, it must be sufficient to enable a judge to determine whether to conduct an evidentiary hearing. . . . Second, the affidavit required under rule 13(a)(2) must be sufficiently detailed to give fair notice to the prosecution of the particular search or seizure that the defendant is challenging."

*Commonwealth* v. *Mubdi,* 456 Mass. 385, 389 (2010).

In this case, neither the affidavit of the defendant, nor that of his girlfriend, Reis, sets forth facts that would demonstrate a reasonable expectation of privacy in the unsecured box held in the common basement area of the Flint Street multi-unit apartment building where Reis had moved after the defendant's arrest. (To repeat for ease of reference, the defendant was arrested on April 21, 2005, and held in custody after that date; the subject search and seizure occurred on October 22, 2008, approximately three and one-half years after the defendant's arrest; the defendant had been in custody since his arrest.)

"An evidentiary hearing is necessary only when the defendant has alleged facts that, if true, would establish (1) that evidence was obtained through a search or seizure for which the Commonwealth must prove probable cause, reasonable suspicion, or

consent to search; and (2) that the defendant has standing to challenge the constitutionality of the search or seizure." *Ibid.* With respect to the latter point, even where there is standing, a defendant "still must show that there was a search in the constitutional sense, that is, that *someone* had a reasonable expectation of privacy in the place searched, because only then would probable cause, reasonable suspicion, or consent be required to justify the search." *Id.* at 393.[7]

Here, we accept for analysis that the defendant had standing (as the second Superior Court judge found).[8] However, the defendant failed to meet his burden concerning the necessary reasonable expectation of privacy prong, which is required to be established even when standing is present. In connection with the motion to suppress, the affidavit of the girlfriend disavowed any privacy interest in the box where the Adidas sneakers were found. Her affidavit states only, "That box was not for my use and the box did not have any of my possessions inside." Furthermore, the girlfriend's affidavit acknowledges that the door to the basement was not locked, and that all tenants of the Flint Street apartment building had common access to, and use of, the basement. See *Commonwealth* v. *Williams*, 453 Mass. 203, 208-209 (2009), wherein the court held that, while the defendant had standing, he nonetheless lacked a reasonable expectation of privacy in the common basement shared by other tenants. In

---

[7] In *Commonwealth* v. *Carter*, 424 Mass. 409, 411-412 (1997), the court held that whether a search in the constitutional sense has taken place " 'turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy' of the *defendant*," quoting from *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991) (emphasis added). See *Commonwealth* v. *Lawson*, *ante* 322, 327 n.5 (2011). Given the statements in *Mubdi*, which is the controlling law and which we quote in the text, *supra*, we address the reasonable expectation of privacy of both the defendant and his girlfriend.

[8] "A defendant has standing if [he] has a possessory interest . . . in the property seized." *Commonwealth* v. *Williams*, 453 Mass. 203, 208 (2009). See *Commonwealth* v. *Genest*, 371 Mass. 834, 836 (1977). The defendant had such a possessory interest in the Adidas sneakers, at least sufficient to have standing. See *Commonwealth* v. *Deeran*, 364 Mass. 193, 195 (1973). Indeed, the Commonwealth contended that certain unique markings and gum stuck to the sneakers matched the photographs of the Adidas sneakers depicted in the police photographs taken at the Durfee Street apartment where the defendant resided, as well as being a likely match to the murder scene foot imprints. See note 5 and accompanying text, *supra*.

*Williams*, as here, there was no lock or other limited means of controlling access to the common basement area; rather, as in *Williams*, so too here, "the tenants of the building used the basement for storage . . . and other people apparently could enter, as the police did, by going through an unlocked door." *Id.* at 209. Thus, suppression was not warranted in *Williams* because "any subjective expectation of privacy the defendant may have had was not objectively reasonable." *Ibid.* The same result obtains in this case. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 301-302 (1991) (no reasonable expectation of privacy above hallway ceiling that was accessible by others, and was not an area controlled by defendant); *Commonwealth* v. *Welch*, 420 Mass. 646, 654 (1995) ("an individual can have only a very limited expectation of privacy with respect to an area used routinely by others"), quoting from *Sullivan* v. *District Ct. of Hampshire*, 384 Mass. 736, 742 (1981). See also *United States* v. *Hawkins*, 139 F.3d 29, 32 (1st Cir.), cert. denied, 525 U.S. 1029 (1998) ("It is now beyond cavil in this circuit that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building").

As noted, the girlfriend's affidavit does not establish any reasonable expectation of privacy in the basement area or in the box. The defendant's affidavit adds nothing to the privacy calculus. Indeed, the defendant's affidavit says nothing about the Flint Street apartment and the basement area that would establish any connection to that place by the defendant. In any event, it is clear from the record — specifically from the date of the defendant's arrest on April 21, 2005, and his being held in custody continuously thereafter — that the defendant never was present at the Flint Street apartment, much less resided there.

"When a defendant has standing under our rule for State constitutional purposes, we then determine whether a search in the constitutional sense has taken place. This determination turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy. The measure of the defendant's expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable. The defendant bears

the burden of establishing both elements." *Commonwealth* v. *Montanez*, 410 Mass. at 301 (citations omitted). This burden to prove a subjective expectation of privacy was not met by the defendant's suppression motion and supporting affidavits. Hence, there was no error in the second judge not holding an evidentiary hearing.

2. *The claim of procedural error.* The defendant next contends that there was nonetheless a procedural error in that the motion judge indicated at the original nonevidentiary hearing that, if the judge determined that the defendant had standing, then the judge may conduct an evidentiary hearing. The defendant reads this remark as, in effect, a guarantee — which it was not — that an evidentiary hearing would be held after the nonevidentiary suppression hearing. Thereafter, the judge entered an order denying suppression and ruling that the defendant had standing, but no reasonable expectation of privacy. The defendant then moved to set aside a portion of the ruling, raising this claim of entitlement to an evidentiary hearing. In denying the motion, the judge issued another ruling, stating that the expectation of privacy issue was "encompassed" in the standing issue — both of which issues were addressed by counsel at the nonevidentiary suppression hearing, and resolved by the order denying suppression.

This latter ruling is correct. The defendant's claim that his expectation of privacy was not addressed at the nonevidentiary hearing is not supported. Rather, it is clear from the transcript of the lengthy hearing that not only was standing addressed, but also the ensuing issue whether there was any reasonable expectation of privacy in the common area basement and the box stored there. Defense counsel argued the issue whether there was an expectation of privacy, citing case law. The prosecutor presented counter argument and case law to demonstrate that neither the defendant, nor his girlfriend, asserted a subjective expectation of privacy on behalf of the defendant in the locus of the search leading to discovery of the defendant's sneakers, i.e., the unsecured box in the accessible basement area of the multi-family dwelling. There was no error in the motion judge's denial of the defendant's motion to suppress evidence obtained at the Flint Street address.

C. *Conclusion.* For the foregoing reasons, the order entered December 17, 2008, allowing the motion to suppress as to the defendant's statements made on April 21, 2005, at the police station interview is reversed, and a new order shall enter denying the motion in its entirety. The order entered December 15, 2009, denying the defendant's motion to suppress evidence obtained at the Flint Street address is affirmed.

*So ordered.*