NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-1431                                       Appeals Court

COMMONWEALTH  vs.  CHRISTOPHER DeJESUS.


No. 19-P-1431.

Bristol.    November 17, 2020. - March 1, 2021.

Present:  Kinder, Shin, & Hand, JJ.


Firearms.  Constitutional Law, Search and seizure, Standing to
    question constitutionality, Privacy.  Search and Seizure,
    Standing to object, Expectation of privacy.  Privacy.
    Evidence, Firearm.  Practice, Criminal, Motion to suppress,
    Motion for a required finding.



Indictments found and returned in the Superior Court
Department on September 6, 2018.

A pretrial motion to suppress evidence was heard by Renee
P. Dupuis, J., and the cases were tried before Thomas F.
McGuire, Jr., J.


Thomas E. Hagar for the defendant.
Tara L. Johnston, Assistant District Attorney, for the
Commonwealth.


HAND, J.  The defendant, Christopher DeJesus, was indicted

in the Superior Court on three counts -- (1) unlawful possession

of a firearm without a license, G. L. c. 269, § 10 (a); (2)

unlawful possession of a large capacity feeding device, G. L. c. 269, § 10 (m); and (3) unlawful possession of ammunition, G. L. c. 260, § 10 (h).[1]  He was charged after police identified him in several Snapchat[2] videos posing with a firearm.  As we discuss in greater detail, infra, the firearm was one of several items recovered in the course of a warrantless search of the basement of a multifamily home that had also been depicted in some of the Snapchat videos.

Prior to trial, the defendant filed a motion to suppress evidence recovered during the search.  Following an evidentiary hearing, a judge (motion judge) concluded that the defendant had neither standing to contest the search nor a reasonable expectation of privacy in the area searched, and denied the motion.

After a jury trial, the defendant was convicted of two charges -- unlawful possession of both a firearm and a large capacity feeding device -- and acquitted of the remaining

---

[1] He was also charged as an armed career criminal in connection with the first and third indictments.  G. L. c. 269, § 10G (a).

[2] "Snapchat is a social media application that allows users to send or post still images or videos. . . .  A user may post images or videos to their 'story,' which allows all those individuals with whom the user is 'friends' to view them on the user's Snapchat page, but they remain available for viewing only for twenty-four hours."  Commonwealth v. Watkins, 98 Mass. App. Ct. 419, 420 (2020).

charges in the indictments.[3]  The trial judge sentenced the defendant to concurrent terms of from two and one-half years to five years in State prison.

On appeal, the defendant argues that the motion judge erred in denying his motion to suppress evidence obtained in the course of the warrantless search of the basement of a multifamily home, and that the trial judge erred in denying his motion for a required finding of not guilty of possession of the firearm at issue and the large capacity feeding device attached to it.  We conclude that the defendant did not have standing to challenge the search, and that even if he did, he had no reasonable expectation of privacy in the area searched.  We are also satisfied that the evidence was sufficient to prove the defendant's possession of the firearm and the large capacity feeding device.  Accordingly, we affirm the judgments.

Discussion.  1.  Motion to suppress.  "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.'"  Commonwealth v. Medina, 485 Mass. 296, 299-300 (2020), quoting

---

[3] The trial judge allowed the defendant's motion for a required finding of not guilty on the indictment for illegal possession of ammunition and, after a jury-waived trial, found the defendant not guilty of the armed career criminal enhancements.

Commonwealth v. Cawthron, 479 Mass. 612, 616 (2018). The defendant does not challenge the motion judge's factual findings as erroneous, and we summarize them here, supplementing as necessary with uncontroverted testimony from the motion hearing.

In the summer of 2018, following a series of shootings in Fall River, the Fall River police department organized a task force to address growing violence within the city. As part of this task force, Detective Matthew Mendes, a member of the department's gang unit, monitored the social media accounts of various individuals suspected of contributing to the violence. On July 26, 2018, Mendes was monitoring the Snapchat account of Darius Hunt, an individual known to Mendes as a member of a gang with a presence in Fall River. Mendes observed a number of videos on Hunt's Snapchat account (videos), which he identified as being taken within twenty-four hours prior to his having viewed them. These videos depicted Hunt, the defendant, and a third individual. In several of the videos, the defendant was "holding a black semi-automatic pistol with an extended magazine and a distinct tan/cream colored grip"; the videos also depicted a basement area and the outside of a three-family dwelling at 14 Downing Street in Fall River (the premises).[4]

---

[4] As we note, infra, the defendant did not live at the premises and does not claim that he was an overnight guest there.

Mendes and several other officers traveled to the premises, intending to conduct further investigation. On arrival, the officers observed a number of individuals, including Hunt and the defendant, standing outside on the premises; when the police approached, the individuals dispersed. Some of the individuals ran to the back yard while the defendant walked down the sidewalk toward the home of his girlfriend and her mother, at 4 Downing Street. Mendes ran around to the back of the premises, chasing Hunt. Although the back yard was empty when he arrived, Mendes observed that the rear door to the basement was ajar, and he heard people running in the basement.

Mendes and two other officers followed the footsteps and entered the basement through the open door. The basement, a common area utilized by the residents of the apartments on the premises, had no locks on the doors leading into it. Once inside the basement, the officers observed a firearm in plain view in an open bag placed on a table; the firearm appeared to be the same one the police saw in the videos being handled by Hunt and the defendant. The police "seized the scene," obtained a search warrant, and later took possession of the bag containing the firearm and other items. The defendant was arrested on the sidewalk between 14 Downing Street and 4 Downing Street.

The defendant moved to suppress evidence seized from the basement of the premises, including the firearm and ammunition, arguing that the evidence was discovered in the course of an improper warrantless search of the basement.[5]  The motion judge denied the motion, concluding that the defendant lacked both standing to challenge the search of the basement at the premises and a reasonable expectation of privacy in the area searched.

On appeal, the defendant argues that the motion judge erred in these conclusions; more specifically, he contends that he was entitled to automatic standing to challenge the search under art. 14 of the Massachusetts Declaration of Rights and the cases stemming from the Supreme Judicial Court's ruling in Commonwealth v. Amendola, 406 Mass. 592, 600-601 (1990).  We are not persuaded.

The automatic standing rule, set forth by the United States Supreme Court in Jones v. United States, 362 U.S. 257 (1960), provides that "defendants charged with crimes of possession have standing to challenge the search."[6]  Commonwealth v. Frazier, 410

---

[5] We glean this from the motion judge's detailed memorandum of decision denying the motion to suppress.  The record does not include a copy of the defendant's motion.

[6] Although the rule was abandoned by the Federal courts in United States v. Salvucci, 448 U.S. 83 (1980), it continues to be recognized under Massachusetts State law.  See Commonwealth v. Amendola, 406 Mass. at 601 ("we hold today that the automatic standing rule survives in Massachusetts as a matter of State constitutional law").  See, e.g., Commonwealth v. Mubdi, 456

Mass. 235, 241 (1991), citing Jones, supra at 263. It applies where "possession of the seized evidence at the time of the contested search is an essential element of guilt."[7] Frazier, supra at 243, quoting Amendola, 406 Mass. at 601.

"Under the Fourth Amendment to the United States Constitution, the question whether the defendant has standing to challenge the constitutionality of a search or seizure is merged with the determination whether the defendant had a reasonable expectation of privacy in the place searched," and therefore, "a defendant has no standing if he has no reasonable expectation of privacy in the place searched." Commonwealth v. Mubdi, 456 Mass. 385, 391 (2010), citing Rakas v. Illinois, 439 U.S. 128, 138-139 (1978). Under art. 14, "the question of standing remains separate from the question of reasonable expectation of privacy." Mubdi, supra. See Commonwealth v. Williams, 453 Mass. 203, 208 (2009) ("Although the two concepts [of standing

---

Mass. 385, 390 (2010); Commonwealth v. Frazier, 410 Mass. 235, 241 (1991); Commonwealth v. Ware, 75 Mass. App. Ct. 220, 227 (2009).

[7] It is immaterial whether the defendant is charged with possession on a theory of constructive possession or actual possession, so long as he or she is charged with possession at the time of the search or seizure. See, e.g., Commonwealth v. Carter, 424 Mass. 409, 410-411 (1997) ("We have granted a defendant automatic standing to challenge the seizure of property in the possession of another at the time of the search, if the defendant has been charged with the constructive possession of that property at that time").

and expectation of privacy] are interrelated, [under art. 14] we consider them separately").  Thus, using an art. 14 analysis, where automatic standing applies, the defendant need not demonstrate his or her own personal privacy interest, see Mubdi, supra at 392; instead, a defendant with automatic standing need only "show that there was a search in the constitutional sense, that is, that someone had a reasonable expectation of privacy in the place searched."  Id. at 393.

a.  Standing.  It is undisputed that the defendant was not in possession -- actual or constructive -- of the firearm at the time of the search.[8]  Thus, automatic standing does not apply on the basis of the defendant's possession.  Cf. Commonwealth v. Ware, 75 Mass. App. Ct. 220, 227 (2009), quoting Amendola, 406 Mass. at 601 ("[w]hen a defendant is charged with a crime in which possession of the seized evidence at the time of the contested search is an essential element of guilt, the defendant shall be deemed to have standing to contest the legality of the search and the seizure of that evidence" [emphasis added]).[9]

---

[8] This distinction was later made clear to the jury through the trial judge's instructions that "the [d]efendant is not charged with possession of a firearm . . . at the time the police entered the basement and seized certain objects.  The [d]efendant is charged with possession of a firearm . . . at the time the video recording was made."

[9] To the extent the defendant argues that he is entitled to automatic standing as a consequence of his presence on the premises at the time of the search, we note the motion judge's

The defendant has not met his burden of demonstrating his automatic standing to challenge the search of the premises.[10]

b. <u>Expectation of privacy</u>. Even had the defendant shown that he had automatic standing to challenge the search, his entitlement to protection under the automatic standing rule falters on his inability to demonstrate that he, or anyone else, had a reasonable expectation of privacy in the area searched, and thus, that a search in the constitutional sense had taken place. See <u>Mubdi</u>, 456 Mass. at 393 ("that <u>someone</u> had a reasonable expectation of privacy in the place searched"). See also <u>Commonwealth</u> v. <u>Johnson</u>, 481 Mass. 710, 715, cert. denied, 140 S. Ct. 247 (2019) (defendant bears burden of demonstrating violation of reasonable expectation of privacy); <u>Commonwealth</u> v. <u>Rice</u>, 441 Mass. 291, 295 (2004) (same). Relevant to this determination is the character of the location involved, whether the defendant owned or had access to the area, and the area's accessibility to others. See <u>Williams</u>, 453 Mass. at 208, citing <u>Commonwealth</u> v. <u>Welch</u>, 420 Mass. 646, 653-654 (1995).

---

finding that the defendant was no longer on the premises at the time of the officers' search.

[10] Because the defendant has failed to demonstrate either "a possessory interest in the place searched or in the property seized," or that he was "present when the search occurred," he has not otherwise demonstrated his standing. <u>Williams</u>, 453 Mass. at 208.

The search was conducted in the basement of a home that the defendant concedes he does not own or occupy; the defendant does not claim to have been a guest in the home. Even if we were to conclude that the defendant had a subjective expectation of privacy in the basement -- which we do not -- given the nature of access to the area and that the defendant neither owned nor controlled the area, that expectation would have been unreasonable. See Commonwealth v. Carter, 39 Mass. App. Ct. 439, 442 (1995), S.C., 424 Mass. 409 (1997) (expectation of privacy not objectively reasonable where "defendant did not own the place involved, was not a tenant, and was not an invitee of the . . . apartment dweller"). See also Sullivan v. District Court of Hampshire, 384 Mass. 736, 742 (1981) ("an individual can have only a very limited expectation of privacy with respect to an area used routinely by others").

Assessing the defendant's showing of an objective expectation of privacy -- that is, whether anyone had a reasonable expectation of privacy in the items and area searched -- we consider whether "(i) [an] individual has 'manifested a subjective expectation of privacy in the object of the search,' and (ii) 'society is willing to recognize that expectation as reasonable' (citation omitted)." Johnson, 481 Mass. at 715, quoting Commonwealth v. Augustine, 467 Mass. 230, 242 (2014), S.C., 470 Mass. 837 and 472 Mass. 448 (2015). "This

determination turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy."  Commonwealth v. Montanez, 410 Mass. 290, 301 (1991).  Here, neither consideration is present.

Generally, tenants in a multiunit home do not have a reasonable expectation of privacy in common areas.  See Williams, 453 Mass. at 209 (no reasonable expectation of privacy in basement common area accessed by unlocked door); Montanez, 410 Mass. at 302 (no reasonable expectation of privacy, and therefore no constitutional search, in "common area, accessible to the public, that was freely and frequently used by people other than the defendant").  See also Commonwealth v. Sorenson, 98 Mass. App. Ct. 789, 792 (2020), quoting Commonwealth v. Escalera, 462 Mass. 636, 648 (2012) (curtilage "applied narrowly to multiunit apartment buildings").  Nor do we find authority to suggest that landlords have a reasonable expectation of privacy in the areas freely accessible to their tenants.  The basement searched in the present case was readily available to use by all tenants in the building, as well as their invitees and the landlord, and none exerted exclusive control.  Additionally, none of the doors leading into the area had locks.  Thus, in this case, "the relevant criteria and pertinent case law would appear to place [the area] beyond any constitutionally protected

privacy zone." Commonwealth v. Dora, 57 Mass. App. Ct. 141, 145 (2003).

Absent a constitutionally protected reasonable expectation of privacy held by anyone, the motion judge properly denied the motion to suppress.[11]

2. Sufficiency of the evidence. The defendant moved for a required finding of not guilty on all counts at the close of the Commonwealth's case, arguing that the evidence was insufficient to allow the jury to find that the gun at issue qualified as a "firearm" for the purposes of G. L. c. 140, § 121; the motion was renewed when the defendant rested.[12] The trial judge allowed the motion as to the indictment for unlawful possession of ammunition,[13] but denied it as to the firearm and the large capacity feeding device. On appeal, the defendant changes tack, arguing instead that the evidence was insufficient to prove that the defendant's brief handling of the firearm as depicted in the

---

[11] In light of our conclusion that the defendant did not have a reasonable expectation of privacy over the premises or standing to challenge the entry and search of the premises, we need not reach the defendant's challenges to the existence of probable cause or exigent circumstances justifying the search.

[12] The defendant cross-examined the Commonwealth's witnesses; as was his right, he chose not to put on evidence of his own.

[13] The trial judge's ruling was based on his determination that the ammunition was not visible in the videos.

videos amounted to his "possession" of the gun.[14]  We are not persuaded.

A motion for a required finding of not guilty is a challenge to the sufficiency of the evidence, see, e.g., Commonwealth v. Jones, 432 Mass. 623, 625 (2000), and we review the judge's ruling under the Latimore standard, "viewing the evidence in the light most favorable to the Commonwealth and ask[ing] whether the evidence and inferences reasonably drawn therefrom were 'sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged.'"  Commonwealth v. Squires, 476 Mass. 703, 708 (2017), quoting Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011).  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

Under G. L. c. 269, § 10 (a), the Commonwealth must prove the defendant knowingly possessed an item that meets the legal definition of a firearm.  See Commonwealth v. White, 452 Mass. 133, 136 (2008); Commonwealth v. Watkins, 98 Mass. App. Ct. 419, 421-422 (2020).  "[P]ossession does not depend on the duration

---

[14] Although this argument is raised for the first time on appeal, "a conviction premised on legally insufficient evidence always creates a substantial risk of a miscarriage of justice." Commonwealth v. Kurko, 95 Mass. App. Ct. 719, 722 (2019), quoting Commonwealth v. Montes, 49 Mass. App. Ct. 789, 792 n.4 (2000).  We review any error against that standard.  See Commonwealth v. Silvelo, 96 Mass. App. Ct. 85, 104 n.13 (2019) (Shin, J., dissenting).

of time elapsing after one has an object under his control so long as, at the time of contact with the object, the person has the control and the power to do with it what he or she wills." Commonwealth v. Hall, 80 Mass. App. Ct. 317, 330 (2011), citing Commonwealth v. Harvard, 356 Mass. 452, 457-458 (1969).

The defendant argues that it is not possible to determine from the video evidence whether he owned the firearm or was temporarily holding it and that, if he only had momentary possession of the firearm, it would not be sufficient to sustain a finding of possession.

We are satisfied that the evidence in this case was sufficient to prove the defendant had possession of the firearm and the large capacity feeding device at the time of the videos, which clearly show the defendant holding the firearm and posturing with it, pointedly displaying the attached feeding device, and mimicking the action of aiming and firing the weapon.[15]  See Commonwealth v. Seay, 376 Mass. 735, 737-738

---

[15] The defendant offers an analogy to Commonwealth v. Atencio, 345 Mass. 627, 628, 631 (1963), in which participants in a game of "Russian roulette" were found to have only temporary possession of a firearm, having each held the gun and pulled the trigger once.  The basis of the court's determination in Atencio was that the defendants did not carry the firearm within the meaning of G. L. c. 269, § 10, as it existed at the time, where "[t]he idea conveyed by the statute is that of movement, [that the defendant] 'carries on his person or under his control in a vehicle.'"  Atencio, supra at 631.  Since that time, and as the defendant acknowledges, the statute has been amended; the requirement that the Commonwealth show that the

(1978) (defendant handling gun in foyer and stairway area of his apartment building prior to sale more than momentary); Commonwealth v. Stallions, 9 Mass. App. Ct. 23, 25 (1980) (defendant's taking gun, walking fifteen to twenty feet, and returning gun within one to two minutes of having taken it "far more than momentary"). We are satisfied that at the time of the videos' recording, the defendant had control and power over the firearm and large capacity feeding device such that a rational jury could have concluded that the defendant was in possession of them for that period of time. We discern no error in the judge's denial of the motion for a required finding of not guilty.

Conclusion. The defendant failed to demonstrate that he had standing to challenge the warrantless search of the common area in which the firearm and other contraband were found, or that anyone had a reasonable expectation of privacy in the contraband left there. Accordingly, the motion to suppress was properly denied. Because the evidence was sufficient to establish the defendant's possession of the firearm at issue and

_____

defendant "carrie[d] [the firearm] on his person" has been eliminated. Commonwealth v. Duncan, 71 Mass. App. Ct. 150, 153 n.4 (2008) ("the cases relied upon by the defendant all predate the 1990 amendment to G. L. c. 269, § 10 [a], which eliminated the words 'carries on his person' from § 10 [a]. See St. 1990, c. 511, § 2. Since the time of that amendment, § 10 [a] has simply prohibited the knowing possession of a firearm without a license").

the large capacity feeding device, there was no error in the denial of the motion for a required finding.

<u>Judgments affirmed</u>.